579 So.2d 961 (1991)
Terry SHIELDS and Robert Helmka
v.
CITY OF SHREVEPORT, et al.
No. 90-C-2069.
Supreme Court of Louisiana.
May 6, 1991.
Dissenting Opinion May 28, 1991.
*962 Ronald Miciotto, Shreveport, for Terry Shields and Robert Helmka plaintiffs-applicants.
Jerald N. Jones, City Atty. and Lydia M. Rhodes, Asst. City Atty., for City of Shreveport, et al. defendants-respondents.
Dissenting Opinion of Justice Dennis May 28, 1991.
COLE, Justice.[*]
This case involves the termination of two police officers by the Shreveport Police Department for drinking alcohol while performing security duty at a high school alumni reunion. The issues before us are whether sufficient evidence supported the charges which led to the officers' termination and whether § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 (1982) applies to prohibit their terminations. We conclude there was sufficient evidence to support the findings of the Civil Service Board of Review; and, the Rehabilitation Act has no application to the officers' termination from service. The judgment of the court of appeal upholding the terminations is, therefore, affirmed.

I.
Plaintiffs Terry Shields and Robert Helmka accepted the extra duty job on June 27, 1987. The high school class reunion party was held at the Holidome in Shreveport. Shields and Helmka were attired in the uniform of the Shreveport Police Department during the entire assignment. Both officers admitted leaving the motel on two occasions and purchasing and consuming alcoholic beverages while in uniform and while performing the security duty for the affair. In addition, Shields admitted serving a drink to a party guest, and Helmka fell asleep in public view while on duty.
*963 An investigation was initiated on July 7, 1987 by the Shreveport Police Chief. On August 17, 1987 a pre-disciplinary hearing was conducted. Following this hearing, the Chief placed the officers on administrative leave and directed them to the Employee Assistance Program to be evaluated for any drinking problem. The program counselor suggested they be evaluated by an independent chemical dependency service. This was done and preliminary findings were made by the service that both Shields and Helmka are alcoholics. On August 21, 1987 the officers were terminated from employment for violation of Departmental Rules and Civil Service Statutes.
Pursuant to La.R.S. 33:2501(A), plaintiffs appealed their dismissal to the City of Shreveport Municipal Fire and Police Civil Service Board ("the Board"). After conducting the required hearing, on December 16, 1987 the Board voted 3-2 to uphold the dismissals.
Plaintiffs next appealed their termination to the First Judicial District Court, Caddo Parish, pursuant to La.R.S. 33:2501(E)(1). They alleged the Board's decision was not supported by the law or by the evidence presented at the hearing. Later, they amended their petition to allege the Board erred when it failed to consider their alcoholism as a defense. The trial court concluded the officers should not have been terminated, but instead should have been offered rehabilitation.
The City of Shreveport and the Board appealed the ruling of the district court to the Court of Appeal, Second Circuit. Initially, that court affirmed the decision of the trial court. On rehearing, however, a five-judge panel recalled and vacated the original opinion and issued a new opinion reversing the trial court and upholding the terminations. Shields v. City of Shreveport, 565 So.2d 473, 478-81 (La.App.2d Cir. 1990). The court concluded the Board had, in fact, acted in good faith in ratifying the dismissals since the evidence presented clearly revealed both officers openly violated departmental regulations. It held the trial court was not free to substitute its opinion as to appropriate disciplinary action when it is shown that officers violated a valid departmental regulation, and disciplinary action was necessary for the efficiency of the department and to avoid detriment to the public. The court noted a board's decision will be sustained unless the record reveals an abuse of discretion or an insufficiency of supporting evidence. Shields, 565 So.2d at 481. Additionally, the court noted that § 504 of the Rehabilitation Act does not preclude the discipline imposed. Id.

II.
Plaintiffs frame the sole issue for our resolution as being whether the court of appeal erred in failing to apply the Rehabilitation Act of 1973 when considering their termination. They proceed, however, to argue first their contention that insufficient evidence supported the violations found by the Board to have been proven. We shall address the latter contention first.
A civil service employee may be discharged or subjected to disciplinary sanctions for any one of the fifteen reasons set forth in La.R.S. 33:2500(A)(1-15). Shields and Helmka were terminated for violating the following statutory provisions: (1) unwillingness or failure to perform the duties of his position in a satisfactory manner; (3) the commission or omission of any act to the prejudice of the departmental service or contrary to the public interest or policy; (5) conduct of a discourteous or wantonly offensive nature toward the public, any municipal officer or employee; and, any dishonest, disgraceful, or immoral conduct; (6) drinking vinous or spirituous liquors while on duty or reporting for duty while under the influence of liquor; (7) the use of intoxicating liquors, ... to an extent which precludes the employee from performing the duties of his position in a safe or satisfactory manner.
In addition, Shields and Helmka were found to have violated the following Shreveport Police Department Rules and Regulations:
Article 302:
Shall conduct themselves on and off duty in such a manner as to reflect most favorably *964 on the department. A member is further charged with the duty to conduct himself at all times in keeping with the Code of Ethics and the policy statements of the Chief of Police. Any activity contrary to this concept, whether or not specifically mentioned or prohibited in these rules may subject a member to disciplinary action.
Article 305:
Shall constantly direct their best efforts to accomplish the functions of the department efficiently. They shall not engage in any activity of personal business which may cause them to neglect or be inattentive to duty. They shall at all times be attentive to their duties and by their alertness and observation, demonstrate an interest in their work.
Article 307:
Shall notify their supervisor if possible or someone else in authority before leaving their duty station or post for any reason, including injury or illness.
Article 309:
Shall maintain sufficient competency to properly perform their duties and assume the responsibilities of their positions. Members shall perform their duties in a manner which will maintain efficiency in carrying out the functions and objectives of the Department.
Article 312:
While on-duty shall not enter or visit any cocktail lounge, beer parlor, or similar place where alcoholic beverages is [sic] the principal commodity sold except when on official business.
Article 313:
Shall not drink any intoxicating beverage on duty, except in actual performance of their assigned duties requiring its use.
Article 315:
Shall not consume alcoholic beverages while wearing the police uniform or any part thereof.
When conducting a hearing on an appeal of a disciplinary action, a civil service board must vacate the decision of the appointing authority if it finds "that the action was not taken in good faith for cause." La.R.S. 33:2501(C)(1). The "cause" must be one of the causes specified in La.R.S. 33:2500. A board may affirm the appointing authority's action only "if the evidence is conclusive." La.R.S. 33:2501(C)(1). The appointing authority must prove its case by a preponderance of the evidence. Linton v. Bossier City Mun. Fire & Police Board, 428 So.2d 515 (La.App.2d Cir.1983). On appeal from an adverse decision of a civil service board, the hearing shall "be confined to the determination of whether the decision made by the board was made in good faith for cause under the provisions of this Part. No appeal to the court shall be taken except upon these grounds...." La.R.S. 33:2501(E)(3). Our review of a civil service board's findings of fact is limited. Those findings are entitled to the same weight as findings of fact made by a trial court and are not to be overturned in the absence of manifest error. City of Kenner v. Wool, 433 So.2d 785, 788 (La.App. 5th Cir.1983).
The dismissal of a police officer does not occur "in good faith" if the appointing authority acted arbitrarily or capriciously, or as the result of prejudice or political expediency. Martin v. City of St. Martinville, 321 So.2d 532 (La.App.3rd Cir. 1975), writ denied, 325 So.2d 273 (La.1976). "Arbitrary or capricious" means the lack of a rational basis for the action taken. Bicknell v. United States, 422 F.2d 1055 (5th Cir.1970).
We have no difficulty concluding that neither the appointing authority nor the Board acted arbitrarily or capriciously in upholding the terminations. Neither do we find insufficient evidence of record to support the numerous allegations of misconduct.[1] By their own admission, Shields and Helmka twice left the duty premises to purchase alcohol. They were in uniform and were armed with department-issued service revolvers. They left without notifying *965 a superior officer. They proceeded to drink the alcohol while in uniform and while being paid to perform security services. Helmka admitted sleeping on the job for as much as two hours.
The officers' actions posed a serious danger to the safety of others. The disciplinary action was taken for valid legal cause. It was taken in good faith since both officers openly violated numerous departmental regulations. As the court of appeal noted, "[i]t is important, concerning employees sworn to uphold public trust, that a public service department be permitted to set appropriate standards of conduct." Shields, 565 So.2d at 481.
Having found sufficient evidentiary support for the allegations, having found no manifest error in the Board's findings, and having found the actions were taken in good faith for cause, we conclude Shields and Helmka were properly removed from the civil service.

III.
Plaintiffs next contend that § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 (1982)[2] should operate to prevent their being terminated without first being offered rehabilitative treatment for their alcoholism.
We note at the outset plaintiffs did not raise this issue before the Board at any time. Rather, the issue was raised for the first time in a memorandum to the district court, which was acting in an appellate capacity to review the Board's decision. The scope of review of a reviewing court in civil service appeals is limited to whether the board's decision was made in good faith for cause. Courts look only to the evidence presented before the board and will review this evidence in light of the presumption that the board found facts sufficient to afford a legal basis for its decision. McIntosh v. Monroe Municipal Fire and Police Civil Service Board, 389 So.2d 410, 413 (La.App.2d Cir.1980), writ denied, 395 So.2d 1363 (La.1981); La.R.S. 33:2501(E)(3).
We note also the Rehabilitation Act requires that the program or activity involved be one which receives Federal financial assistance. 29 U.S.C. § 794(a) (1982). At no point in these proceedings have the plaintiffs alleged that the Shreveport Police Department is the recipient of such assistance.
The issue raised by plaintiffs' contention that the Rehabilitation Act operates to prevent their termination would ordinarily not be considered by us because, as explained above, it was never properly before any reviewing court and plaintiffs failed to allege and prove a threshold requirement of the statute. However, the issue has been briefed and argued by counsel and, in the interest of judicial economy, we deem it important to address the question.
One who seeks relief under 29 U.S.C. § 794 (1982) against a recipient of federal financial assistance has available to him the remedies, procedures, and rights set forth in Title VI of the Civil Rights Act of 1964. 29 U.S.C. § 794a(a)(2) (1982). These include a private right of action, see Carter v. Orleans Parish Public Schools, 725 F.2d 261 (5th Cir.1984); Helms v. McDaniel, 657 F.2d 800 (5th Cir.1981), cert. denied, 455 U.S. 946, 102 S.Ct. 1443, 71 L.Ed.2d 658 (1982); and a right to bring an action without previously exhausting administrative remedies. Greater Los Angeles Council on Deafness, Inc. v. Community Television of Southern California, 719 F.2d 1017 (9th Cir.1983), cert. denied, 467 U.S. 1252, 104 S.Ct. 3535, 82 L.Ed.2d 840 (1984).
*966 While existing jurisprudence has not indicated whether a plaintiff who seeks to bring an action under § 794 must bring that action exclusively in federal court, the Supreme Court of the United States has recently decided that Title VII claims may be brought in either federal or state court, i.e., that Congress did not divest the state courts of their presumptively concurrent jurisdiction. See Yellow Freight System, Inc. v. Donnelly, 494 U.S. ___, ___, 110 S.Ct. 1566, 1567, 108 L.Ed.2d 834 (1990). We believe the same reasoning applies to Title VI cases, and, by extension, to Rehabilitation Act cases brought under § 794 against a recipient of federal funds.
The elements of a cause of action under the Rehabilitation Act are that the plaintiff: (1) is a handicapped person; (2) is otherwise qualified for participation in the program; (3) is being excluded from participation in, denied the benefits of, or subjected to discrimination under the program solely because of his handicap; and, (4) the relevant program or activity must be receiving federal assistance. Doherty v. Southern College of Optometry, 862 F.2d 570, 573 (6th Cir.1988), cert. denied, ___ U.S. ___, 110 S.Ct. 53, 107 L.Ed.2d 22 (1989).
We assume, arguendo, that a Rehabilitation Act claim may be asserted by way of defense, in the manner in which plaintiffs seek to apply it, although our research has provided no example of the Act being used in any way but as the basis for a discrete, self-contained lawsuit. We assume also that the Shreveport Police Department receives federal financial assistance. Notwithstanding these assumptions, however, we must conclude plaintiffs cannot prevail on such a claim.
First, the record reveals the plaintiffs were not discharged because they are alcoholics, i.e., they were not terminated "solely by reason of their handicaps." 29 U.S.C. § 794(a) (1982). Rather, they were terminated because they committed specific acts of misconduct on the job. They violated the previously mentioned statutory provisions and departmental regulations by drinking while in uniform, by twice leaving their duty station without notifying a supervisor, by entering a liquor store and purchasing liquor while in uniform, and, in Helmka's case, by falling asleep on the job for two hours. Hence, they were discharged for their acts, not because of their status or condition.
Second, to prevail under § 794, a plaintiff must be an "individual with handicaps ..., as defined in section 706(8) of this title....." 29 U.S.C. § 794(a) (1991). Section 706(8) provides, in pertinent part,
[s]ubject to subparagraphs (C) and (D), the term "individual with handicaps" means, for purposes of subchapters IV and V of this chapter, any person who (i) has a physical or mental impairment which substantially limits one or more of such person's major life activities, (ii) has a record of such an impairment, or (iii) is regarded as having such an impairment. For purposes of sections 793 and 794 of this title as such sections relate to employment, the term "individual with handicaps" does not include any individual who is an alcoholic whose current use of alcohol prevents such individual from performing the duties of the job in question or whose employment, by reason of such current alcohol abuse, would constitute a direct threat to property or the safety of others.

29 U.S.C. § 706(8)(B), (C)(v) (1991) (emphasis added).
"It appears from the plain language of the statute that only alcoholics ... whose problems are under control are protected from discriminatory treatment." Railway Labor Executives' Ass'n v. Burnley, 839 F.2d 575, 591 (9th Cir.1988), rev'd on other grounds, Skinner v. Railway Labor Executives' Ass'n, 489 U.S. 602, 109 S.Ct. 1402, 103 L.Ed.2d 639 (1989). Like the heroin-addicted police officer in Heron v. McGuire, 803 F.2d 67 (2d Cir.1986) (per curiam), the plaintiffs in this case have shown that they were impaired in their ability to respond to emergency and life-threatening situations. Indeed, even the psychiatrist called by plaintiffs stated that Shields's condition interfered with his functioning as a police officer and that it would be in his and *967 society's best interest if he no longer engaged in that occupation. Helmka's problems were indicated to be yet more substantial. We believe the conclusion is inescapable that plaintiffs' employment would constitute a direct threat to property or the safety of others. Hence, they are not "individuals with handicaps" and are not protected by the Rehabilitation Act.

IV.
For the foregoing reasons, the judgment of the court of appeal is, in all respects, affirmed.
AFFIRMED.
LEMMON, J., concurs.
DENNIS, J., dissents with reasons.
CALOGERO, C.J., dissents, and would reinstate the judgment of the district court.
DENNIS, Justice, dissenting.
I respectfully dissent.
If the officers were discharged because of their infractions of drinking while working as security guards at a private party, it is clear that the terminations were done arbitrarily after proceedings that were lacking in due process and good faith. On the other hand, if the officers were discharged because of their handicaps of alcohol addiction, rather than for their infractions, they were discharged in violation of the Federal Rehabilitation Act, 29 U.S.C. § 701, et seq., and Art. I § 3 of the 1974 Louisiana Constitution, which protect handicapped persons from government actions arbitrarily, capriciously, or unreasonably discriminating against them because of their disabilities.

DISCHARGE PROCEEDINGS
Because the record does not contain a transcript of the testimony, our review is based on the Civil Service Board's summary of the evidence. According to that summary, the evidence strongly indicates that the officers were discharged because of their handicaps of alcohol addiction, not because of their drinking while working the private party detail. But even if the Chief of Police's ambivalent testimony is interpreted to mean that the particular violations were the principal cause for the discharges, the chief's determination was nevertheless arbitrary and based on procedures lacking in good faith, due process and fairness.
Before the chief referred the officers to the employee assistance program for evaluation he had thoroughly investigated the officers' infractions and had gathered all of the facts surrounding the violations. The chief testified that he referred the men to the assistance program in order to find out more about the nature of their alcohol abuse problems. There is no evidence, however, that the chief informed the officers that any information they might disclose to the employee assistance program would be used against them as circumstances aggravating their violations. On the contrary, the officers reasonably could have assumed, and probably did infer, that disclosures of intimate details of their histories of alcoholism during the evaluation process would be used to determine whether they were fit subjects for rehabilitation, not to aggravate their offenses.
The coordinator of the employee assistance program testified that, after he evaluated the officers personally and had them interviewed by a certified chemical dependence counselor, he recommended to the Chief of Police that the officers be allowed to enter treatment for alcoholism, as the first step in their alcohol rehabilitation program. Nevertheless, three days after receiving the coordinator's report and recommendation, the Chief of Police discharged the two officers. In his testimony, the chief indicated that, in addition to the officers' infractions of drinking while on security duty at a private party, he based his decision to fire them on the background and history of the officers' alcohol addiction; the potential detriment to the police department from their continued employment; and their failure to begin their recovery prior to their violations.
In my opinion, this procedure fell below the standards of good faith and due process. *968 If the chief had already decided to discharge the officers when he referred them for employee assistance evaluation, the employee assistance program was misused and treated as a vehicle for gathering aggravating evidence without disclosing this objective to the officers. This use of an employee assistance program was contrary to its purpose which is to render confidential assistance to employees and thereby encourage all employees in need of aid to seek counseling and rehabilitation rather than to cover up their abusive behavior to the greater detriment of themselves and their employer in the long run. In effect, the officers were induced to give character and background evidence against themselves about their alcoholism by a tacit offer to consider them as prospects for rehabilitation. After obtaining the history and background evidence of their alcoholism from the employee assistance program, however, the chief not only refused to consider their cases for rehabilitation on the merits, he also used the evidence thus obtained to provide reasons for firing them.
The action of the chief for the city in this case is analogous to the denial of due process that occurs when the state breaches a promise by which it has induced a criminal defendant's guilty plea or breaks a plea bargain in which the defendant has been led to believe he will receive probation. See State v. Dixon, 449 So.2d 463 (La. 1984), and cases cited therein. Furthermore, this court and the U.S. Supreme Court have held that in a disciplinary proceeding the disciplinary agency cannot sanction the licensee because of evidence of misconduct that comes to light in the trial unless it has been fairly charged in the petition. In re Ruffalo, 390 U.S. 544, 88 S.Ct. 1222, 20 L.Ed.2d 117 (1968); LSBA v. McGovern, 481 So.2d 574 (La.1986). Here the officers were denied due process because they evidently would not have been terminated but for their alcohol addiction, a condition or shortcoming with which they were not charged.
On the other hand, if the Chief of Police referred the officers to the assistance program for rehabilitation evaluation, rather than as a device to elicit aggravating evidence from them, he nevertheless acted arbitrarily and not in good faith in discharging them, because it is clear that he either terminated them without even considering the alternative of allowing them to enter a rehabilitation program or he assumed without supporting evidence that they were not fit subjects for rehabilitation. In the latter case, the only evidence in the record militates heavily in favor of finding that the officers were fit for treatment, rehabilitation and continuation of employment while participating in the rehabilitation program. The employee assistance program director recommended rehabilitation programs for the officers after having them evaluated by medical and chemical dependency experts. The Chief of Police, who bears the burden of demonstrating a rational basis for rejecting such professional recommendations, did not make a specific finding of non-eligibility, articulate adequate reasons for such decision or point to any evidence in the record in support of any such determination.

FEDERAL REHABILITATION ACT OF 1973
Although the city in this litigation claims that the officers were terminated only for their infractions of drinking on security assignment, rather than for their handicaps of chemical dependency, that claim is clearly a post hoc rationalization of counsel rather than the true administrative determination. The infractions occurred on June 27, 1987; the Chief of Police started his investigation on July 7, 1987; at the chief's direction, Sergeant Brice investigated and reported essentially all of the facts to the chief; the chief met with the superior officers and managers of the department on August 4, 1987, discussed the violations and received their recommendations; a pre-disciplinary hearing was conducted on August 17, 1987, to inform the officers of the findings of the chief's investigation. Thus, no later, than August 17, 1987, and probably much earlier, the Chief of Police had been apprised of the facts surrounding the infractions. Yet he did not discharge Shields and Helmka on August *969 17, 1987, but instead referred the officers to the employee assistance program for evaluation. Clearly, the chief did not terminate the men for drinking while at the private party, for he would have done this on August 17 or earlier if he considered these specific infractions to be sufficient grounds.
A careful reading of the whole record presented for our review reflects that the true reason that the Chief of Police discharged the officers was that he learned from the employee assistance program evaluation that they were addicted to alcohol and did want the police department to incur whatever risks there might be involved in their continued employment. Furthermore, the chief's failure to give particularized reasons related to the character and propensities of each individual officer's addiction or history of alcoholism indicates that the discharges were based on a blanket policy against the employment of alcoholics. In fact, in his testimony, the chief indicated that he relied on two basic assumptions: that a police officer with a past history of alcohol abuse, per se, is an unacceptable risk to the integrity of the department and the safety of the public; and that there is no obligation on the part of the chief or the city to consider a chemically dependent officer as a candidate for rehabilitation unless he had begun recovery prior to his offense giving rise to the disciplinary proceeding. Essentially, these are the same reasons underlying the opinion of the majority in this court and that of the en banc panel in the court of appeal. I believe that these reasons are part of an invalid rationale that conflicts with both the Federal Rehabilitation Act and the Right to Individual Dignity clause of our state constitution.
A person addicted to alcohol, who is not engaged in current use of alcohol or drugs preventing performance of job duties, and whose employment would not constitute a direct threat to property or safety of others, falls within the protection of the Rehabilitation Act of 1973, 29 U.S.C. § 701, et seq. Thus, the Act clearly provides such a person with a remedy for employment discrimination based on his past history of alcoholism. See Davis v. Bucher, 451 F.Supp. 791 (E.D.Pa.1978); Simpson v. Reynolds Metals Co., 629 F.2d 1226 (7th Cir.1980); Whitlock v. Donovan, 598 F.Supp. 126 (D.D.C.1984); R. Richards, Handicap Discrimination in Employment: The Rehabilitation Act of 1973, 39 Ark.L. Rev. 1, 9 (1985).
Section 504 of the Act provides in pertinent part:
No otherwise qualified handicapped individual in the United States, ... shall, solely by reason of his handicap, be excluded from the participation in, be denied the benefits of, or be subject to discrimination under any program or activity receiving Federal financial assistance.
29 U.S.C. § 794.
The clear words of the Act indicate that a "handicapped individual" includes one addicted to drugs or alcohol. 29 U.S.C. § 706(6) defines the term as:
[A]ny person ... who (a) has a physical or mental impairment which substantially limits one or more of such person's major life activities, (b) has a record of such impairment, or (c) is regarded as having such an impairment.
29 U.S.C. § 706.
It is undisputed that drug or alcohol addiction substantially affects an addict's ability to perform major life activities, defined by the Department of Health, Education and Welfare regulations supplementing the Act, 42 Fed.Reg. 22686 et seq. (May 4, 1977) as "caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." Id. § 84.2(j)(2)(iii). Furthermore, prior addiction and alcohol or drug abuse clearly fall within the definition of having a "record of such impairment," 29 U.S.C. § 706(6)(C), as defined in § 84.2(j)(2)(iii) of the Regulations. See Davis v. Bucher, supra.
Moreover, the analysis, at 42 Fed.Reg. 22686 (May 4, 1977) directly addresses and disposes of the issue of whether drug or alcohol addicts are encompassed by the Act:

*970 The Secretary has carefully examined the issue and has obtained a legal opinion from the Attorney General. That opinion concludes that drug addiction and alcoholism are `physical or mental impairments' within the meaning of section 7(6) of the Rehabilitation Act of 1973, as amended, and that drug addicts and alcoholics are therefore handicapped for purposes of section 504 if their impairment substantially limits one of their major life activities. The Secretary therefore believes that he is without authority to exclude these conditions from the definition. There is a medical and legal consensus that alcoholism and drug addiction are diseases although there is disagreement as to whether they are primarily mental or physical. In addition while Congress did not focus specifically on the problems of drug addiction and alcoholism in enacting section 504, the committees that considered the Rehabilitation Act of 1973 were made aware of the Department's long-standing practice of treating addicts and alcoholics as handicapped individuals eligible for rehabilitation services under the Vocational Rehabilitation Act.
451 F.Supp. at 796.
Under Section 504 of the Act, it is clear that an employee has protection despite a prior history of alcoholism. Johnson v. Smith, 39 F.E.P. 1106, 1985 WL 4998 (D.Minn.1985) (correctional officer). And that alcoholics who are receiving treatment may not be automatically disqualified. Healy v. Bergman, 609 F.Supp. 1448, 37 F.E.P. 1589 (D.Mass.1985); 3A Larson, Employment Discrimination § 106.14(e).
As is evident from the statute and the regulations, the definition of a "handicapped individual" includes an individual who is an alcoholic or drug abuser if he is not engaged in current use of alcohol or drugs preventing performance of job duties and if his employment would not constitute a direct threat to property or to the safety of others. J.T. Lunt, the personnel director for the City of Shreveport and coordinator of its employee assistance program, interviewed both officers and had them evaluated by a certified substance abuse counselor. Lunt recommended to the chief that the officers be allowed to enter treatment for their condition. This recommendation demonstrates that after his evaluation, Lunt did not believe that the officers were currently using alcohol, that their alcoholism would prevent them from performing their duties or that they would constitute a threat to the public safety and property of others while undergoing treatment and rehabilitation.
In summary, Section 504 of the Act states that "no otherwise qualified handicapped individual ... shall solely by reason of his handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance ..." 29 U.S.C. § 794. The statute has been construed to provide a private right of action under section 504. Smith v. Barton, 914 F.2d 1330, 1339 (9th Cir.1990); Greater Los Angeles Council on Deafness, Inc. v. Zolin, 812 F.2d 1103 (9th Cir.1987); Kling v. County of L.A., 633 F.2d 876, 878 (9th Cir.1980). Administrative remedies, which result in suspensions or termination of the federal assistance to the institutional recipient, do not afford complainants adequate relief; therefore, private plaintiffs suing under section 504 need not first exhaust administrative remedies. Smith, 914 F.2d at 1338; Kling, 633 F.2d at 879.
To prevail in a case brought under section 504, a plaintiff must show that he is (1) a handicapped person under the act; (2) otherwise qualified for the position he seeks to obtain or retain; (3) being excluded from a position solely by reason of plaintiff's handicap; (4) seeking a position, or retention of a position, that exists as part of a program or activity receiving federal financial assistance. Smith, 914 F.2d at 1338; Doe v. New York University, 666 F.2d 761, 774-75 (2d Cir.1981); Zolin, 812 F.2d at 1107; Bentivegna v. U.S. Dept. of Labor, 694 F.2d 619, 621 (9th Cir.1982).
It cannot be seriously disputed that: (1) Shields and Helmka are "handicapped person[s]" under the Act, see 29 U.S.C. *971 § 706(7); (2) they are "otherwise qualified" for the jobs in question; (3) the jobs are part of a federally funded program; although the majority opinion expresses doubt as to this fact, the city does not deny and tacitly concedes the fact by addressing the Rehabilitation Act claim on the merits without asserting any exemption from the statute; (4) the officers are being excluded from positions solely because of their handicaps. See Doe v. New York University, 666 F.2d 761, 774 (2d Cir.1981).
Section 504 prohibits job discrimination against the handicapped, but it does not abolish the right of recipients of federal funding to establish reasonable job-related criteria for their prospective and present employees. Consequently, the courts have struggled to arrive at an interpretation of the Act that will appropriately recognize the legislative intent to remove barriers to the employment of the handicapped while at the same time according to employers reasonable latitude to address the future safety risk created by the employment or continued employment of a physically or mentally impaired worker. Perras & Hunter, Handicap Discrimination in Employment: The Employer Defense of Future Safety Risk, 6 J. Law & Commerce 377, 394 (1986).
The Supreme Court has held that "[a]n otherwise qualified handicapped person is one who is able to meet all of a program's requirements in spite of his handicap." Southeastern Community College v. Davis, 442 U.S. 397, 99 S.Ct. 2361, 60 L.Ed.2d 980 (1979). This cannot mean that the city can discriminate by establishing restrictive "program requirements" where it could not so discriminate in making individual employment decisions. The Rehabilitation Act, taken as a whole, mandates significant accommodation for the capabilities and conditions of the handicapped. Blanket requirements must therefore be subject to the same rigorous scrutiny as any individual decision denying employment to a handicapped person. Bentivegna v. U.S. Dept. of Labor, 694 F.2d 619 (9th Cir.1982).
In some cases, a job requirement that screens out qualified handicapped individuals on the basis of possible future injury to that individual or others is necessary. However, in order to exclude such individuals, "there must be a showing of a reasonable probability of substantial harm." Mantolete v. Bolger, 767 F.2d 1416, 1422 (9th Cir.1985). See also Kelley v. Bechtel Power Corp., 633 F.Supp. 927 (S.D.Fla. 1986); Perras and Hunter, Handicap Discrimination in Employment: The Employer Defense of Future Safety Risk, 6 J. Law & Com. 377 (1986). Such a determination cannot be based merely on an employer's subjective evaluation or, except in cases of a most apparent nature, merely on medical reports. The question is whether, in light of the individual's work history, employment of that individual would pose a reasonable probability of substantial harm. Id.
Such an evaluation necessarily requires the gathering of substantial information by the employer. For it was Congress' intent in enacting the Rehabilitation Act of 1973 to prevent employers from refusing to give much needed opportunities to handicapped individuals on the basis of misinformed stereotypes. This involves, of course, a case by case analysis of the applicant and the particular job. Mantolete, supra; Balt. and Ohio R.R. Co. v. Bowen, 60 Md.App. 299, 482 A.2d 921 (1984).
"Individuals with handicaps are all too often excluded from school and educational programs, banned from employment or are under-employed because of archaic attitudes and laws ..." S.Rep. 93-1297, 93rd Cong., 2d Sess. 32, reprinted in (1974) U.S. Code Cong. and Admin.News 6373, 6400. A mere "elevated risk" standard is not sufficient to insure handicapped persons' "right to employment which complements their abilities". S.Rep. No. 49, 93rd Cong., 1st Sess. 16 (1974).
In the final analysis, the city terminated Helmka and Shields because it found out they were alcoholics. The Chief of Police, in effect, invoked or adopted a blanket policy that an alcoholic police officer, regardless of whether he is capable of entering a *972 recovery program and becoming a rehabilitating alcoholic, presents too great a possibility of future harm to the police department or to the public. As the chief expressed it: "[I have] to look at protecting the community in its totallity. ... [I] have a responsibility to the community ..." Thus, in actuality, the city and the chief found that Helmka and Shields were not qualified handicapped persons because their employment as police officers would pose "an elevated risk of injury" or threat to the safety of the community.
Any qualification based on the risk of future injury or danger must be examined with special care if the Rehabilitation Act is not to be circumvented easily, since almost all handicapped persons are at greater risk from work-related injuries. Bentivegna v. Dept. of Labor, 30 FEP Cases at 877. After careful review, it is clear that the record in the present case was not sufficient to support a finding that the continued employment of Helmka or Shields, as a rehabilitating alcoholic under programs recommended and supervised by the city employee assistance program, constituted a reasonable probability of substantial harm to the officer, the department or the public. Indeed, there was no evidence whatsoever as to what degree, if any, a past history of alcoholism causes a controlled, rehabilitating alcoholic to be a greater safety risk than other employees in general. Like the psychological theories adduced against an applicant for a psychiatry residency with multiple sclerosis in Pushkin v. Regents of the U. Of Colo., 658 F.2d 1372 (10th Cir. 1981) the city's theory that all recovering or rehabilitating alcoholics are bad safety risks provides "weak and inadequate threads" to support a decision having important consequences for a handicapped person.
As outlined above a more demanding legal standard than mere "elevated risk" is required if the policies expressed in the Act's legislative history and regulations are to be implemented in a meaningful way. Although the employer's concern for safe and efficient operations must be recognized and appreciated, an "elevated risk" standard does little to recognize the appropriate factors affecting the ability of an individual who seeks to work in an environment which the government has sought to open to those with physical or mental handicaps.
Instead, in determining the future safety risk of each officer, the city was required to examine carefully their work histories, medical histories, character, propensities and chemical dependence evaluations, to determine whether the employment of each would pose a reasonable probability of substantial harm to himself, others or the public. Because the city failed to make such an examination or determination but relied on a blanket policy against the employment of rehabilitating alcoholics the discharges of the officers violated the Federal Rehabilitation Act.

EQUAL DIGNITY CLAUSE
Additionally, the dismissal of these officers because of their handicap of alcoholism violated the Equal Dignity Clause of our 1974 State Constitution:
No person shall be denied the equal protection of the laws. No law shall discriminate against a person because of race or religious ideas, beliefs, or affiliations. No law shall arbitrarily, capriciously, or unreasonably discriminate against a person because of birth, age, sex, culture, physical condition, or political ideas or affiliations. Slavery and involuntary servitude are prohibited, except in the latter case as punishment for crime.
Art. 1, § 3 of the 1974 Louisiana Constitution (emphasis added).
The reason arbitrary governmental discrimination on the basis of "physical condition" was prohibited was to prevent either governmental executive action or legislative classification disadvantaging physically handicapped and crippled persons unless it substantially furthered a legitimate state purpose. La. Const. Convention of 1973. Verbatim Transcripts Vol. VI, Aug. 30, 1973 pp. 1017, 1021, 1029; Hargrave, The Declaration of Rights, 35 La.L.Rev. 1, 7 (1974). Consequently, when the city government discharged the officers herein *973 because of their physical condition, viz., their handicap of alcohol addiction, it became incumbent upon the government to show that the termination of police officers' jobs on this basis was not arbitrary, capricious or unreasonable but that such terminations reasonably furthered a legitimate state purpose. See Sibley v. Bd. of Supervisors, 477 So.2d 1094, 1108 (La. 1985).
The City did not make such a showing in the record presented for our review. Insofar as the record reflects, the officers were fit subjects and good candidates for treatment, rehabilitation and continued employment during rehabilitation. There was no evidence that they were currently using alcohol or that they would not be able to maintain sobriety and recovery had they been allowed to participate in an employee assistance approved rehabilitation program. There was no evidence that methods which have proven effective in other employee assistance programs, such as monitoring, Alcoholics Anonymous meetings, and chemical testing, could not have been used to allow the officers to be rehabilitated without undue risk to public safety and property. By the same token, the record is devoid of any evidence that such methods cannot be employed to rehabilitate police officers with histories of alcohol abuse as safely and effectively as with other types of employees. Indeed, from the record presented, one could easily draw a contrary inference, i.e., because of the likelihood that a substantial percentage of any class of employees in the American work force suffers from alcohol abuse, see LSBA v. Dumaine, 550 So.2d 1197, 1203 (La.1989), greater protection of public safety and property is afforded when all employees, including police officers, are encouraged to seek treatment, rehabilitation and recovery through employee assistance programs. Of course, an officer whose individual character and propensities disqualifies him from being a fit subject and a good risk for rehabilitation must be excluded after proper individualized evaluation. But the record does not suggest any sound reason why it is necessary to adopt a blanket policy that discourages and prevents all police officers with past alcohol abuse histories, even excellent candidates for recovery, from seeking help from the employee assistance program.

CONCLUSION
For the reasons assigned the officers' terminations should be set aside and the Civil Service Board should be ordered to reinstate each officer subject to reasonable terms of treatment, rehabilitation and recovery to be recommended by the City's employee assistance program, unless careful examination of his work history, medical history, character, propensities and chemical dependence evaluations show that his employment would pose a reasonable probability of substantial harm to himself or others.
NOTES
[*] Judge Wallace A. Edwards of the Court of Appeal, First Circuit, participated in this decision as Associate Justice ad hoc sitting for Associate Justice Pike Hall, Jr., recused.
[1] The appointing authority may remove a civil service employee for any one of the reasons specified in La.R.S. 33:2500(A).
[2] Section 794 provides:

(a) Promulgation of rules and regulations
No otherwise qualified individual with handicaps in the United States, as defined in section 706(8) of this title, shall, solely by reason of her or his handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance....
(b) "Program or activity" defined
For the purposes of this section, the term "program or activity" means all of the operations of
(1)(A) a department, agency, special purpose district, or other instrumentality of a State or of a local government;....