JjGORBATY, J.
Troy Williams appeals a decision of the New Orleans Civil Service Commission affirming his thirty-two day suspension by the New Orleans Police Department. We affirm.
FACTS AND PROCEDURAL HISTORY:
Troy Williams was suspended for thirty-two days from the New Orleans Police Department for unprofessional conduct (3 days), filing false or inaccurate reports (10 days), neglect of duty (10 days), not devoting entire time to duty (3 days), and failure to follow instructions from an authoritative source (3 days). The Civil Service Commission dismissed Officer Williams’s appeal, and this appeal ensued.
The incidents that gives rise to this appeal occurred on April 17, 1998. Pursuant to an anonymous telephone tip to the New Orleans Police Department’s Public Integrity Division (PID), an investigation of Officer Williams was begun. Sgt. Bobbie *815 Jacobson of the PID set up a surveillance of Big Daddy’s, a topless bar on Bourbon Street. Just after midnight on April 17, she observed Officer Williams Upark his police unit on Bourbon Street and enter Big Daddy’s. This activity was recorded on a video camera set up for the surveillance. Sgt. Jacobson moved her vehicle around the corner, and monitored the police radio. While Officer Williams was inside Big Daddy’s, Sgt. Jacobson heard an emergency call for backup go out to which Officer Williams should have responded. He did not. Shortly thereafter, she observed Officer Williams leave Big Daddy’s, drive his partner back to the station, and return to the club.
Shawn Stroud, an FBI agent assigned to the PID, was working undercover as part of the investigation. He testified that before entering the club he saw two uniformed NOPD officers enter the club. Upon entering the club, he was asked if he would like to go to the back for a private dance. He accepted, because he believed the officers had gone to the back, and was seated within five feet of Officer Williams. He testified that Officer Williams was seated at a table with a female employee of the club, and it appeared to Agent Stroud that they were “making small talk.” ‘ It was very noisy, but Agent Stroud was able to hear a transmission over Officer Williams’s radio, although he could not hear what was being transmitted. Agent Stroud stated that Officer Williams stood up quickly, put his radio to his ear, then shrugged his shoulders and sat back down. Ten or fifteen minutes passed before Officer Williams left the club. Agent Stroud also left at that time.
In an attempt to mitigate the charges against him, Officer Williams testified that a previous supervisor, Sgt. Gerald Young, gave him permission to enter Big | ^Daddy’s to contact a female employee who wished to give information to the police, but did not wish to be considered a confidential informant. Officer Williams referred to her as a “citizen contact.” He said that Sgt. Young instructed him to write a memo to Lt. Melvin Howard, assistant commander of the 8th District, explaining why he needed to frequent Big Daddy’s without getting permission from a superior each time. Officer Williams also claimed that he offered evidence that the Big Daddy’s contact had given information in the past that culminated in arrests. Officer Williams insisted that he did not intentionally omit the visit to Big Daddy’s from his activity sheet. He explained that sometimes he would just commit activities to memory, especially if there were no arrests involved. When questioned about not answering the emergency call, Officer Williams claimed that he did not have to monitor the radio when he was assigned to proactive patrol. He also testified that he did not hear a radio transmission the night of April 17 because the music in the club was too loud. If he had heard the call, he would have responded.
Sgt. Lawrence Miller of the Public Integrity Division testified that, based on the evidence obtained during the surveillance, he determined that Officer Williams violated the rule of devoting his entire time to his duty by socializing in Big Daddy’s while on duty. Officer Williams failed to follow instructions from an authoritative source when he did not notify his dispatcher or his supervisor prior to entering an alcoholic beverage outlet (ABO), and neglected his duty when he failed to respond to an emergency call for assistance. Sgt. Miller also determined that [ ¿Officer Williams filed a false or inaccurate report by reporting on his activity sheet that he was in a location other than Big Daddy’s at the time of this incident. Lastly, Officer Williams violated rules of professionalism *816 by entering an ABO in uniform, and socializing with dancers employed at the club.
In response to Officer Williams offer of mitigating circumstances, Sgt. Miller testified that even if Officer Williams had entered the club to get information from a concerned citizen, he still violated rules by not notifying the dispatcher before entering and upon leaving the club. He also questioned whether it would take 35 to 45 minutes to obtain information. Sgt. Miller also disputed Officer Williams’s contention that he forgot to note his visit to Big Daddy’s on his trip sheet. Sgt. Miller pointed out that Officer Williams had put another location on his trip sheet during the time he was actually in Big Daddy’s.
Deputy Superintendent Roñal Serpas testified that he sustained the charges against Officer Williams because he found sufficient evidence to support the charges as alleged by PID.
DISCUSSION:
Officer Williams’s only assignment of error is that the Civil Service Commission acted arbitrarily, capriciously, and contrary to the law and facts in upholding the New Orleans Police Department’s thirty-two day suspension.
Employees with permanent status in the classified civil service may be disciplined only for cause expressed in writing. La. Const, art. X, § 8(A). Disciplinary action against a civil service employee will be deemed arbitrary and |scapricious unless there is a real and substantial relationship between the improper conduct and the “efficient operation” of the public service. Bannister v. Dept. of Streets, 95-0404, p. 8 (La.1/16/96), 666 So.2d 641, 647.
In a civil service disciplinary case, the appellate court has a multifaceted review function. The standard of review on issues of fact is the manifest error/clearly wrong standard. Id. The second part of the appellate court’s function is to review the Commission’s findings as to whether a disciplinary action is based both on legal cause and commensurate with the infraction. The appellate court should not modify the Commission’s findings unless it is arbitrary, capricious, or characterized by an abuse of discretion. Id.; cf. La.Rev. Stat. 49:964. “Arbitrary or capricious” means the absence of a rational basis for the action taken. Id.; Shields v. City of Shreveport, 579 So.2d 961 (La.1991).
Based on our review of the record, we find no error in the Civil Service Commission’s dismissal of Officer Williams’s appeal.
The evidence adduced at the hearing clearly supports all charges. Specifically, there is no dispute that Officer Williams entered Big Daddy’s on April 17, 1998, without notifying the dispatcher or his supervisor before or after doing so. We find Officer Williams’s explanation for not following 8th District procedures lacking credibility. First, Sgt. Young was no longer Officer Williams’s supervisor at the time of this incident. Therefore, even if one were to believe that Sgt. Young had at one time given Officer Williams permission to contact a “citizen informant” at Big Daddy’s, the fact that Young was no longer the supervisor | ^negates the permission. Further, Lt. Melvin Howard denied that he ever received a memo from Sgt. Young detailing Officer Williams’s actions. Lastly, as Deputy Superintendent Serpas pointed out, Sgt. Young had no authority to authorize such activity on his own. Thus, we find no error in the Civil Service Commission sustaining the charge of failure to follow instructions from an authoritative source.
Directly related to the above charge is the charge for not devoting his entire time to his duty by spending over *817 one-half hour in a strip club without specific directions to do so, and without offering a legitimate purpose for being there. Officer Williams does not dispute that he spent that amount of time in the club. His explanation that because his contact was a manager, and sometimes could not talk to him for extended periods of time, is not plausible.
It is also undisputed that Officer Williams entered Big Daddy’s in uniform and while on duty. The evidence suggests that he was socializing with female employees, rather than conducting police business as he claims. Thus, we find the charge of lack of professionalism is substantiated.
Although Officer Williams denies hearing a radio transmission of a call for assistance while in Big Daddy’s, this testimony is disputed by Agent Stroud, who testified that he heard the radio go off, saw Officer Williams stand up, listen to the broadcast, shrug his shoulders and sit back down. As the Civil Service Commission concluded, Agent Stroud had “no axe to grind” with Officer Williams, and, therefore, had no reason to lie. Further, the hearing officer was in the best position to evaluate the live testimony of both Officer Williams and Agent 17Stroud, and chose to credit Agent Stroud’s testimony. We see no reason to upset this finding, and agree that the charge of neglect of duty was properly sustained.
Lastly, we find the charge of filing false or inaccurate reports to be properly sustained. Officer Williams’s explanation about why he did not record his visit to Big Daddy’s on his activity sheet is not credible, particularly in light of the fact that he recorded that he was in another location at the time.
As Deputy Superintendent Serpas testified, the integrity of the New Orleans Police Department has been called into question on many occasions. For this reason, rules and regulations have been put into operation to protect police officers and to ease the public’s mind. The French Quarter was particularly targeted as a problem area because of the proliferation of bars, clubs, strip joints, and the like. The rules are not to be taken lightly, and a police officer should not be allowed to disobey or bend the rules unless he has specific instructions from an appropriate supervisor to do so.
Thus, for the reasons stated above, we affirm the ruling of the Civil Service Commission. All costs of this appeal are to be borne by Officer Williams.
AFFIRMED.