# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 17-1164


**GREGORY CORMIER**

**VERSUS**

**CITY OF LAFAYETTE, ET AL.**


\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. 20160933
HONORABLE EDWARD B. BROUSSARD, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

**D. KENT SAVOIE**
**JUDGE**

\*\*\*\*\*\*\*\*\*\*

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Phyllis M. Keaty, and D. Kent Savoie, Judges.


**AFFIRMED.**

**C. Theodore Alpaugh, III**
**Claude A. Schlesinger**
**Guste, Barnett, Schlesinger, Henderson & Alpaugh, L.L.P.**
**639 Loyola Avenue, Suite 2500**
**New Orleans, Louisiana  70113-7103**
**(504) 529-4141**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
     **Gregory Cormier**

**Marie Candice Hattan**
**Attorney at Law**
**110 East Kaliste Saloom, Suite 101**
**Lafayette, Louisiana  70508**
**(337) 234-0431**
**COUNSEL FOR DEFENDANT/APPELLEE:**
     **Lafayette Municipal Fire & Police Civil Service Board**

**Michael P. Corry, Sr.**
**J. Daniel Siefker, Jr.**
**Briney Foret Corry**
**413 Travis Street, Suite 200**
**Post Office Drawer 51367**
**Lafayette, Louisiana  70505-1367**
**(337) 237-4070**
**COUNSEL FOR DEFENDANT/APPELLEE:**
     **Lafayette City Parish Consolidated Government/Lafayette Police**
     **Department**

**SAVOIE, Judge.**

Plaintiff, Gregory Cormier, appeals the judgment of the trial court, upholding the Lafayette Municipal Fire and Police Civil Service Board decision to terminate his employment with the Lafayette Police Department. For the following reasons, we affirm.

**FACTS AND PROCEDURAL HISTORY**

On September 12, 2012, Gregory Cormier, a Lieutenant with the Lafayette Police Department (LPD), was notified that his employment with the LPD was terminated by then Police Chief James Craft, as a result of Internal Affairs investigation AD2012-007. Investigation AD2012-007 involved the removal and dissemination of a confidential police file document. It was determined that Mr. Cormier removed said document from the file, whited out certain information included on the form, and gave the document to Scott Poiencot, a Corporal with the LPD. The confidential document was then given to Olita Magee, an attorney representing Edward Mclean, who was appealing his termination by the LPD. Olita Magee attached the document in question to an appellate brief and it was later learned that the document was taken from a shift level investigative file. The LPD considers the information contained in these files to be confidential.

Cormier appealed his termination to the Lafayette Municipal Fire and Police Civil Service Board. An evidentiary hearing was held on February 17, 2016, to determine Cormier's appeal. After the evidence and testimony was presented, the Board found that Cormier "improperly removed a confidential document from an Internal Affairs file and disseminated it to other parties without any authorization. . . . in direct violation of Lafayette Consolidated Government PPM: 2161-2, G.O. 201.2, G.O. 204.5 and G.O. 301.9." The Board unanimously upheld the LPD's decision, finding that the LPD "acted in good faith" in terminating Cormier's employment.

Cormier next appealed to the Fifteenth Judicial District Court. He argued that the document was not a protected document because it was on the LPD server. He further argued that it had been introduced as an exhibit in previous Civil Service appeals with no parts redacted. It had also been produced pursuant to a public records request. Therefore, Cormier argued, he should not have been disciplined for producing a protected document. The Fifteenth Judicial District Court found no manifest error in the Board's decision to uphold the termination of Mr. Cormier and affirmed the ruling. Mr. Cormier now appeals the judgment of the Fifteenth Judicial District Court.

## LAW AND ANALYSIS

The procedure for appeals by civil service employees to the board is found in La.R.S. 33:2501(A). It states:

> Any regular employee in the classified service who feels that he has been discharged or subjected to any corrective or disciplinary action without just cause, may, within fifteen days after the action, demand, in writing, a hearing and investigation by the board to determine the reasonableness of the action. The board shall grant the employee a hearing and investigation within thirty days after receipt of the written request.

If the employee is aggrieved by the decision of the Board, his recourse is found in La.R.S. 33:2501(E), which states:

> (1) Any employee under classified service and any appointing authority may appeal from any decision of the board, or from any action taken by the board under the provisions of the Part that is prejudicial to the employee or appointing authority. This appeal shall lie direct to the court of original and unlimited jurisdiction in civil suits of the parish wherein the board is domiciled.
>
> (2) The appeal shall be taken by serving the board, within thirty days after entry of its decision, a written notice of the appeal, stating the grounds thereof and demanding that a certified transcript of the record, or written findings of facts, and all papers on file in the office of the board affecting or relating to such decision, be filed with the designated court. The board shall, within ten days, after the filing of the notice of appeal, make, certify, and file the complete transcript with the designated court, and that court shall thereupon proceed to hear and determine the appeal in a summary manner.

2

(3) This hearing shall be confined to the determination of whether the decision made by the board was made in good faith for cause under the provisions of this Part. No appeal to the court shall be taken except upon these grounds and except as provided in Subsection D of this Section.

In *Poiencot v. Lafayette Consolidated Government*, 16-1009, pp. 5-6 (La.App. 3 Cir. 5/31/17), 222 So.3d 733, 736 (quoting *Moore v. Ware*, 01-3341, pp.7-8 (La. 2/25/03), 839 So.3d 940, 945-46), this court explained the standard of review required by the appellate court, stating:

> If made in good faith and statutory cause, a decision of the civil service board cannot be disturbed on judicial review. *Smith v. Municipal Fire & Police Civil Service Bd.*, 94-625 (La.App. 3 Cir. 11/02/94), 649 So.2d 566; *McDonald v. City of Shreveport*, 655 So.2d 588 (La.App. 2 Cir.1995). Good faith does not occur if the appointing authority acted arbitrarily or capriciously, or as the result of prejudice or political expediency. *Martin v. City of St. Martinville*, 321 So.2d 532 (La.App. 3 Cir.1975), *writ denied*, 325 So.2d 273 (La.1976). Arbitrary or capricious means the lack of a rational basis for the action taken. *Shields v. City of Shreveport*, 579 So.2d 961, 964 (La.1991); *Bicknell v. United States*, 422 F.2d 1055 (5th Cir.1970). The district court should accord deference to a civil service board's factual conclusions and must not overturn them unless they are manifestly erroneous. *Shields v. City of Shreveport*, 565 So.2d 473, 480 (La.App. 2 Cir.), aff'd, 579 So.2d 961 (La.1991). Likewise, the intermediate appellate court and our review of a civil service board's findings of fact are limited. *Shields*, 579 So.2d at 964. Those findings are entitled to the same weight as findings of fact made by a trial court and are not to be overturned in the absence of manifest error. *Id.*; *City of Kenner v. Wool*, 433 So.2d 785, 788 (La.App. 5 Cir.1983).

Mr. Cormier first argues that the document at issue is not confidential and, therefore, he should not have been disciplined for this offense. He contends that there is no information contained on the document identifying any investigation of any officer. In support, Mr. Cormier cites *City of Baton Rouge v. Capital City Press*, 07-1088, 07-1089 (La.App. 1 Cir. 2/13/09), 7 So.3d 21. In that case, the local newspaper, The Advocate, attempted to retrieve records of investigations of officers who were charged with offenses post-Katrina. The City of Baton Rouge contended that the records were confidential and were not subject to the Public Records Law. The first

3

circuit ruled that the documents were subject to production, with personal information redacted.

Mr. Cormier's reliance on this case is misplaced. The Advocate was not an employee of the police department, and, as such, it was not governed by the department's policies and procedures. As an officer of the LPD, Mr. Cormier was bound by the Lafayette Consolidated Government Policy and Procedures. He was found to be in violation of PPM: 2161-2: Conditions of Employment, which states: "2.7 'Unauthorized removal or use of any official correspondence, record, computer file, e-mail or report from any LCG building, office or file.'" Mr. Cormier was also found to be in violation of Lafayette Police Department General Order 204.5 Departmental Discipline, 3.8 Confidentiality: "All departmental business is to be considered confidential and no employee shall release any information to any non-law enforcement entity without proper authorization. No employee shall make known to anyone a proposed action of the Department or the details of any police action/operation."

In our view, Mr. Cormier is clearly in violation of both of these policies. He removed a document from a file without authorization. PPM 2161-2 prohibits its unauthorized removal, which Mr. Cormier admits that he did. Under this regulation, whether the document is considered confidential is of no moment. Regardless, G.O. 204.5 considers all departmental business to be deemed confidential. Therefore, as it pertains to employees of the Lafayette Police Department, this document is considered to be confidential in accordance with the policies and procedures manual.

Next, Mr. Cormier argues that the notice of the pre-disciplinary hearing did not inform him of the charges against him, nor was he given an explanation of his employer's evidence. As such, he contends that his due process rights were violated. In *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 105 S.Ct. 1487 (1985), the United State Supreme Court mandated due process for a civil service employee,

including notice of the charges against him and an opportunity to present his side of the story.

The evidence in the record indicates that Mr. Cormier signed an internal memorandum informing him that he was the subject of an Internal Affairs Investigation. The allegations of the investigation are listed as:

- **Internal Investigation (Confidentiality Policy) LPD G.O. 301.9** *Information or copies of internal investigations shall not be furnished to anyone without permission from the Chief of Police.*

- **Professional Conduct and Responsibilities LPD G.O. 201.2**

- **Conditions of Employment LCG-PPM 2161-2 (2.7)** *Unauthorized removal or use of any official correspondence, record, computer file, e-mail, or report from any LCG building, office or file.*

This document is dated May 11, 2012, and is signed by Mr. Cormier on May 15, 2012. In addition, on June 20, 2012, Mr. Cormier was interviewed, with his attorney present, as part of the Internal Affairs Investigation. The following questions were utilized during the interview:

1. Are you familiar with LCG-PPM 2161-2 CONDITIONS OF EMPLOYMENT 2.7 which prohibits unauthorized removal or use of any official correspondence, record, computer file, e-mail or report from an LCG building, office or file?

2. Are you aware of LPD G.O. 301.9 INTERNAL INVESTIGATIONS, RESPONSIBILITY OF DEPARTMENT PERSONNEL TO COOPERATE. Section entitled: CONFIDENTIALITY POLICY "A" which states[, "]Information or copies of internal investigations shall be furnished to anyone without permission from the Chief of Police["]?

3. Have you copied Internal Affairs documents or documents related to an administrative or shift-level investigation between May 1, 2011 and May 10, 2012?

4. Since May 1, 2011, have you given Internal Affairs documents or copies of Internal Affairs documents including statements and inter-office memo to someone other than an internal affairs officer, the chief of police or a commanding officer charged with receiving or reviewing said document?

. . . .

7. Did you give Ms. Olita Magee a copy or original SL Notice/Instruction Interoffice Communication document for any reason?

8. Were you involved in any way in M[s]. Magee receiving the SL Notice Interoffice communication document? To include copying, whiting out, redacting or giving the document to someone to do so?

Mr. Cormier was also given the opportunity to be heard at his pre-disciplinary hearing on September 7, 2012, wherein he was represented by counsel. After a recitation of the allegations against him, Mr. Cormier was told that he could make a verbal statement and/or provide the investigator with a written statement. Mr. Cormier chose to make a verbal statement in which he stated, "The only thing I can say [about] all these allegations that you cited [is that] I didn't do [it]. That's about it."

In *LaPointe v. Vermilion Parish School Board*, 15-432, pp. 8-9 (La. 6/30/15), 173 So.3d 1152, 1158-59, the Louisiana Supreme Court explained the right to due process:

> "[T]he central meaning of procedural due process is well settled. Persons whose rights may be affected are entitled to be heard; and in order that they may enjoy that right, they must first be notified." *Wilson v. City of New Orleans*, 479 So.2d 891, 894 (La.1985) (citations omitted). An equal concomitant to this right is "the right to notice and opportunity to be heard," which must be extended at a meaningful time and in a meaningful manner. *Id.* (citing *Fuentes v. Shevin*, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972); *Armstrong v. Manzo*, 380 U.S. 545, 85 S.Ct. 1187, 14 L.Ed.2d 62 (1965)).
>
> . . . .
>
> "[D]ue process is not a technical concept with a fixed content unrelated to the time, place and circumstances." *Wilson*, 479 So.2d at 894 (citing *Cafeteria Workers v. McElroy*, 367 U.S. 886, 81 S.Ct. 1743, 6 L.Ed.2d 1230 (1961)). Rather, it requires the implementation of flexible rules that may yield to the demands of the particular situation. Id. (citing *Morrissey v. Brewer*, 408 U.S. at 489, 92 S.Ct. at 2604).

Based on the evidence before us, we find that Mr. Cormier was provided sufficient due process and that his rights in this regard were not violated.

Lastly, Mr. Cormier complains that the City of Lafayette and the Lafayette Police Department failed to comply with La.R.S. 40:2531, otherwise known as the Police Officers' Bill of Rights, and, because of this, the disciplinary action is an absolute nullity. Specifically, Mr. Cormier contends that the investigation exceeded the time limits established in the Bill of Rights. At the time of the Internal Affairs Investigation in question, La.R.S. 40:2531 stated, in pertinent part:[1]

> B. Whenever a police employee or law enforcement officer is under investigation, the following minimum standards shall apply:
>
> (1) The police employee or law enforcement officer being investigated shall be informed, at the commencement of interrogation, of the nature of the investigation and the identity and authority of the person conducting such investigation, and at the commencement of any interrogation, such officer shall be informed as to the identity of all persons present during such interrogation. The police employee or law enforcement officer shall be allowed to make notes.
>
> . . . .
>
> (7) When a formal and written complaint is made against any police employee or law enforcement officer, the superintendent of state police or the chief of police or his authorized representative shall initiate an investigation within fourteen days of the date the complaint is made. Except as otherwise provided in this Paragraph, each investigation of a police employee or law enforcement officer which is conducted under the provisions of this Chapter shall be completed within sixty days. However, in each municipality which is subject to a Municipal Fire and Police Civil Service law, the municipal police department may petition the Municipal Fire and Police Civil Service Board for an extension of the time within which to complete the investigation. The board shall set the matter for hearing and shall provide notice of the hearing to the police employee or law enforcement officer who is under investigation. The police employee or law enforcement officer who is under investigation shall have the right to attend the hearing and to present evidence and arguments against the extension. If the board finds that the municipal police department has shown good cause for the granting of an extension of time within which to complete the investigation, the board shall grant an extension of up to sixty days. Nothing contained in this Paragraph shall be construed to prohibit the police employee or law enforcement officer under investigation and the appointing authority from entering into a written agreement extending the investigation for up to an additional sixty days. The investigation shall be considered complete upon notice to the police employee or law enforcement officer under investigation of a pre-disciplinary hearing or a determination of an

---

[1] The Internal Affairs Investigation of Greg Cormier occurred in 2012. Louisiana Revised Statutes 40:2531 was amended in 2014 and 2017.

unfounded or unsustained complaint. Further, nothing in this Paragraph shall limit any investigation of alleged criminal activity.

C. There shall be no discipline, demotion, dismissal, or adverse action of any sort taken against a police employee or law enforcement officer unless the investigation is conducted in accordance with the minimum standards provided for in this Section. Any discipline, demotion, dismissal, or adverse action of any sort whatsoever taken against a police employee or law enforcement officer without complete compliance with the foregoing minimum standards is an absolute nullity.

. . . .

Mr. Cormier urges this court to utilize April 11, 2012, as the date in which this investigation was initiated. He argues that, on that day, Sergeant Keith Gremillion discovered that the confidential memorandum was attached to the Mclean brief. It was then that Sergeant Gremillion began to search for the source of the document. Based on this argument, the time to complete the investigation ended on June 10, 2012, and, therefore, the request for extension that went before the Board on June 12, 2012, was too late, as the time delays had expired.

A formal investigation was launched on May 11, 2012. It should be noted that Sergeant Gremillion had not ascertained who had removed and disseminated the confidential document on that date. Since no person had been identified, fourteen LPD officers and one LPD civilian employee were investigated based upon their access to the file in question. Mr. Cormier was one of the fifteen employees. This is important because La.R.S. 40:2531(B) states that these minimum standards apply "[w]henever a police employee or law enforcement officer is under investigation." While Sergeant Gremillion may have been looking into the matter on April 11, 2012, and thereafter, no police employee or law enforcement officer was under investigation until May 11, 2012. Even then, fifteen investigations were filed because Sergeant Gremillion had not yet discovered the source of the document.

Further, this same argument was before this court in *Uletom Hewitt v. Lafayette City-Parish Consolidated Government*, 15-835 (La.App. 3 Cir. 3/2/16), 186 So.3d

8

339. In that case, Hewitt sought review of the decision of the Board, which affirmed his seven-day suspension. The district court upheld the ruling. Hewitt argued that the decision of the Board must be reversed because the investigation of him was not completed within the time mandated by La.R.S. 40:2531. Hewitt contended that a form entitled "INVESTIGATION OF POSSIBLE MISCONDUCT BY EMPLOYEE" that was filed on February 25, 2011, sounded the beginning of the investigation. This court disagreed and found that this form was actually the formal, written complaint contemplated by La.R.S. 40:2531, after which the chief of police or his authorized representative must initiate the initial investigation. That date was determined to be March 2, 2011, which is the date the formal investigation, signed by Chief Craft, was initiated.

In our case, the form initiating the Internal Affairs Investigation, including allegations, was signed by Major Jackie Alfred as Designee for Chief Jim Craft on May 11, 2012. Mr. Cormier acknowledged receipt of this document by his signature and by dating it May 15, 2012. Therefore, the request for extension that went before the Board on June 12, 2012, was timely. According to La.R.S. 40:2531, the extension must be made within sixty days of the investigation's commencement. The extension granted the LPD an additional sixty days within which to complete the investigation. The pre-disciplinary hearing, which triggered the conclusion of the investigation was held on September 7, 2012, within one hundred twenty days of the initial investigation. We find that the investigation was completed timely.

## DECREE

Based on the foregoing, we find no error in the Board's decision to uphold Gregory Cormier's termination. We find that the Internal Affairs Investigation of Gregory Cormier was conducted in a timely manner. We further find that the Lafayette Municipal Fire and Police Civil Service Board acted in good faith and statutory cause in finding that there was sufficient evidence to terminate Greg

9

Cormier's employment with the Lafayette Police Department. All costs of this appeal are assessed to Greg Cormier.

**AFFIRMED.**