433 So.2d 785 (1983)
CITY OF KENNER
v.
Joseph A. WOOL, Jr. and Municipal Fire and Police Civil Service Commission of the City of Kenner.
No. 82-CA-245.
Court of Appeal of Louisiana, Fifth Circuit.
May 17, 1983.
Rehearing Denied July 15, 1983.
Philip J. Boudousqué, New Orleans, for plaintiff-appellant.
Sanford Krasnoff, Sapir & Krasnoff, New Orleans, for defendants-appellees.
Before KLIEBERT, CURRAULT and DUFRESNE, JJ.
KLIEBERT, Judge.
The City of Kenner appeals from a judgment of the district court which upheld the decision of the Kenner Fire and Police Civil *786 Service Board, reversing the dismissal of Joseph Wool, Jr. from his employment in a permanent classified position of Police Officer for the City of Kenner. After the investigation of an alleged confrontation between Wool and a group of people by the Internal Affairs Sections of the Department of Police, the Police Chief, as the appointing authority, terminated Wool's employment on October 2, 1980 for an alleged violation of Articles 32 and 73 of the Rules for the Administration of the Department of Police. Article 73 requires an off-duty policeman to carefully and courteously identify himself and exhibit his credentials when requested to do so. Article 32 provides that a police officer will not use or direct unjustifiable force or threats or intimidate any person. Following a hearing, the Board found the City did not act in good faith in terminating Wool and failed to show sufficient cause for the dismissal. We affirm the trial court.
The incident which led to the alleged violation and ultimate dismissal occurred when Wool was off duty and returning to his home at 2618 Helena Street in his private automobile at about 12:30 in the early morning. Riding in the front seat of the vehicle with Wool was his wife, Mae, and riding in the rear seat were his two step-sons, 8 and 14 years of age, and his step-daughter, 15 years of age. When Wool reached the same block in which his home was located, a group of people were milling around. Wool and members of the group who lodged complaints against him have different versions of whether the group was blocking the street and what occurred after Wool stopped his vehicle. Following the confrontation, Wool went to his home and called the police department for assistance. Several hours after the call was made a police unit arrived at Wool's home. However, the group of people with whom he had the confrontation had disbursed and no action was taken.
Two days after the incident, Jerry Rhoades and his niece, Marla Smith, filed a complaint against Wool and gave voluntary statements to Detective Fayard, whose assignment included investigations for the internal affairs section of the police department. According to their statements, they, along with others, were outside looking at a car when Wool stopped his car and told them to get the (expletive deleted) out the street or he would roll over them. They asked for identification but Wool refused to comply. Wool then returned to his car, got a gun, waived the gun around, pointed it at them and otherwise sought to intimidate them. When Rhoades recognized Wool as a police officer who lived in the same block of Helena they backed off. Almost thirty days after the complainants gave their statements to Detective Fayard, he obtained, on September 10, 1980, the following statement from Wool:
"Q: What happened to cause you to call the police?
A: The report was made at about 1:25 AM. It took them almost an hour to get there. There was some kind of a mix-up at the jail. Myself and my three step-kids and my wife, we were coming from eating a piazza (sic). It was around 12:30 AM and there had about 8 or 10 people blocking the street. There was a car on the right side in the 2600 block of Helena Street and these people were standing on the left side and they had the street blocked. Like I said there were 8 or 10 people or more people standing out there and they had beer in their hands and a couple of them, in my opinion, looked like they might have been smoking grass. I didn't confiscate anything but it looked to me like marijuana. Like unfiltered cigarettes. When I stopped the car they were, started crowding the car and looking at the passengers in the car. I asked them why they were blocking the street and I told them that people couldn't pass. One of them that I disinctly (sic) remember with a black beard and long hair started using obscene language in front of me and my family, (expletive deleted) and things like that. I *787 don't remember all of the conversation. And he asked me, who are you, the police? After he went into his karate stance and started to hit me and started flaring his arms and legs at me and one of the people in the group grabbed him and was restraining him. Then several other people started trying to fight me and the kids and May (sic) started screaming. At the time she was pregnant and she was getting upset so I got into the car and drove home and called for a unit. Throughout the whole time this was transpiring there was a couple of people who were trying to fight me and saying something like `let's get it on' or something like that. One guy kept on screaming and shouting. I feared for the safety of my wife and the children and the unborn child. I got into the car and left and called for a unit. You might add that the child was born three weeks early according to the doctor's statement due to the incident, due to the excitement the night before. The baby was born on August 5th but she went into labor the next day and was in labor for two days."
Without obtaining additional statements from the members of the group or from the people in Wool's car, the Police Chief terminated Wool's employment.[1]
At the hearing before the Board, Marla Smith testified substantially in accordance with her statement. On direct testimony, Rhoades testified substantially in accordance with his statement, however, on cross examination, he substantiated Wool's version of the threatening karate stances and actions by one member of the group. He further stated that he and other members of the group had to restrain this person from continued intimidation of Wool.
Detective Fayard testified that he had made no efforts to obtain statements from Wool's wife because she had a baby or from her children because he believed they would substantiate Wool's version of the confrontation. He also testified that his only effort to obtain statements from other members of the group was through the complainants themselves who informed him that the others did not want to get involved because they were concerned about future police harassment.
Wool's eldest step-son appeared and testified at the hearing on Wool's behalf. He corroborated Wool's testimony which was substantially in accordance with the statement he had given to Fayard. In addition, he corroborated Wool's testimony at the hearing that he obtained his gun only after he heard his step-son say that a member of the group had a gun.
At the conclusion of the hearing, three members of the Board found the City had not acted in good faith in the termination of Wool's employment because it failed to make a thorough and complete investigation before dismissing him. The same three also found the City had failed to submit sufficient evidence to support the charges made against Wool. One member of the Board dissented from these findings.
The City's assignments of error on appeal are predicated on the contention the Board's decision went beyond its authority because it is not authorized to, but, in fact, did substitute its opinion as to the desirability for disciplinary action for that of the appointing authority. On the other hand, Wool contends appellate review of the decision of the Board is limited to a determination of whether the Board's decision was made in good faith for cause.
Article 10, Section 8(A) of the Louisiana Constitution of 1974 provides as follows:
§ 8. Appeals
Section 8. (A) Disciplinary Actions. No person who has gained permanent status in the classified state or city service *788 shall be subjected to disciplinary action except for cause expressed in writing. A classified employee subjected to such disciplinary action shall have the right of appeal to the appropriate commission pursuant to Section 12 of this Part. The burden of proof on appeal, as to the facts, shall be on the appointing authority.
Under the provisions of R.S. 33:2501, "... any regular employee in the classified service who feels that he has been discharged or subjected to any corrective or disciplinary action without just cause may... demand in writing, a hearing and investigation by the board to determine the reasonableness of the action ...", and "... if they find that the action was not taken in good faith for cause ..." can set aside or modify the decision of the appointing authority.
The same statute provides for an appeal of the Board's decision to the district court. The district court is required "... to hear and determine the appeal in a summary manner ...", i.e., on the basis of the record made before the Board. The court's hearing "... is confined to a determination of whether the decision made by the Board was made in good faith for cause ...."
In Newman v. Department of Fire, 425 So.2d 753 (La.1983), the Supreme Court held that in reviewing Civil Service Board decisions, the appropriate standard of review is to determine whether the conclusions reached by the Board are arbitrary or capricious. Disciplinary action against an employee is deemed to be arbitrary or capricious unless there is a real and substantial relationship between the improper conduct and the efficient operation of the public service. The appointing authority carries the burden of showing by a preponderance of the evidence that the conduct did in fact impair the efficient and orderly operation of the public service. Additionally, on appellate review the findings of fact made by the Board are entitled to the same weight as findings of fact made by a trial court and are not to be overturned in the absence of manifest error. Department of Public Safety v. Rigby, 401 So.2d 1017 (La.App. 1st Cir.1981).
Pure and simple, on evidence submitted the commission had to make a credibility call, that is, whether they agreed with the two complainants or with Wool and his step-son. The majority of the Board chose to believe Wool. Based on our review of the record, we cannot say they erred, for we also believe Wool over the complainants.
Simply put, if the City had a factual basis to terminate Wool's employment, the evidence which it presented to the Board did not prove it. Since the City made an inadequate investigation of the incident and failed to carry its proof by a preponderance of the evidence, we affirm the judgment of the trial court. All costs to be borne by the City.
AFFIRMED.
NOTES
[1] There had been a previous effort to dismiss Wool, which resulted in an appeal to the Fourth Circuit Court of Appeal. See City of Kenner v. Wool, 320 So.2d 245 (La.App. 4th Cir.1975).