WICKER, Judge.
This is an appeal from a decision by the Jefferson Parish Personnel Board upholding Alloyd P. Lambert’s termination from the position of Librarian I with the Jeffer *327 son Parish Library Department. We reverse and remand.
Lambert was a civil service permanent status employee who received two unsatisfactory ratings on October 16, 1989 and April 26, 1990. He was fired May 2, 1990. Lambert appealed to the Personnel Board. After a hearing, the Board affirmed the disciplinary action. Lambert now appeals and specifies the following errors:
1. The judgment is contrary to the law and evidence (manifestly erroneous) as it finds that the appointing authority was justified in terminating plaintiff in that:
a. The decision itself recognizes that the rating supervisor was inaccurate in her assessment of Appellant’s knowledge of library procedures.
b. Appellee’s decision recognizes that appellant’s intentions and motives in dealing with the public were of the best kind.
c. The decision recognizes that the fine money incident and the incident where appellant was 20-30 minutes late from a break (due to his rescuing a female whose car was stranded on St. Charles Avenue) does not represent the type of conduct for which termination is appropriate, yet it upheld the termination.
d. The decision finds that Appellant’s conduct did not improve after consultation with his supervisors, which is contrary to the evidence.
e. The decision notes that Appellant failed to put in a request for leave form for the 20-30 minutes he was late for returning from break, but fails to recognize that he offered to put in a leave slip (see c above) but his supervisor, Debbie Troxclair, instructed him not to, as she was going to check with her supervisors. Shortly, thereafter, Appellant was terminated.
f. The decision states that the fact that Appellant loaned $1.00 of the fine money to set a trap to discover which of the employees working under him were going behind his back and reporting him to his supervisors shows that he was concerned with matters other than improving his performance. The decision fails to recognize that as a supervisor, Appellant’s performance depended on his ability to manage the employees under him, and his ability to manage these employees and to efficiently operate the branch would be seriously undercut if employees were ignoring the chain of command and going “above Appellant’s head” on problems they may have had with operations.
g.The decision finds legal cause for termination where none exists.
2. Alternatively, the Board erred in failing to consider the issue of whether Appellant should have been demoted or received a lesser action other than termination.
Since we find merit to Lambert’s specification of error that no legal cause exists for termination, we pretermit a discussion of the remaining specifications of error.
Rule XII, Section 1.3 of the Personnel Rules for Jefferson Parish provides:
Each employee serving in a permanent status civil service appointment shall be rated at least once in each calendar year, in conjunction with consideration of the employee’s annual pay raise eligibility. An employee rated Unsatisfactory shall not be eligible for a pay raise until and unless a re-rating of Satisfactory is made. The overall rating (Satisfactory or Unsatisfactory) shall be indicated on the pay raise form.
Lambert was rated unsatisfactory on October 16, 1989. The rating form entered into evidence indicates a satisfactory rating in “Attendance” and “Attitude” but an unsatisfactory rating in “Performance”. That form contained the following comments by his supervisor, Deborah B. Trox-clair:
During the past year, Alloyd Lambert has experienced a great deal of difficulty maintaining the operations of the Eara-han branch. He has been conferenced about this on more than one occasion, and it was pointed out to him that his performance was unsatisfactory due to the following problems:
*328 1) Inability to take control of the branch (evidenced by being unfamiliar with operations when questioned and not acting when the Meeting Room door could not be locked to secure the branch),
2) Not giving directions to staff (evidenced by not acting on a leave request by a staff member),
3) Not making certain that procedures are being carried out in a timely manner (evidenced by not making certain branch inventory was being performed until reminded of it just prior to deadline), and
4) Being unsure of basic branch procedures (evidenced by not keeping the Meeting Room book up-to-date, not getting a replacement for a staff member on Civil Leave, and sending branch shelf list cards to Typing for books still in the branch collection).
During August, Mr. Lambert received additional training in order to help him improve his performance. However, he still is uncertain as to what operations are in progress at his branch. Therefore, he is being given an Unsatisfactory rating in Performance and will be evaluated again within six months. By that time, he must have made the following improvements to be rated Satisfactory:
1) He must demonstrate control of the operations at the Harahan branch and a thorough knowledge of the procedures being carried out,
2) He must be able to demonstrate all branch procedure procedures and train employees working at his branch in the same, and
3) He must continually monitor the personnel working at the branch to be certain that all procedures are being completed in a timely fashion.
If improvement in these areas and an overall ability to meet the requirements of the Librarian I position are not demonstrated, an additional Unsatisfactory rating would result in termination.
Service ratings “are not appealable to the Personnel Board until and unless they result in some form of appealable disciplinary action.” Rule XII, Section 1.6 of the Personnel Rules for Jefferson Parish. After Lambert was terminated following a second unsatisfactory rating he appealed to the Personnel Board.
Lambert’s second unsatisfactory rating occurred April 26, 1990. He was again rated satisfactory in “Attitude” and “Attendance” but unsatisfactory in “Performance”. He was rated unsatisfactory overall. The comments of his supervisor, Deborah B. Troxclair, on the April, 1990 form were as follows:
Alloyd Lambert is a pleasant individual who has increasingly experienced difficulty managing the operations of the Harahan branch. Although he has tried, he has been unable to take control of the branch; he also has had difficulty giving instructions and delegating tasks to the branch staff. In addition, he is unsure of basic branch procedures and has had problems making certain that operations are being carried out in a timely manner. He has been conferenced about these problems several times and, on his yearly Service Rating, was rated Unsatisfactory in Performance and received an overall Unsatisfactory rating. At that time, he was informed that, in order to receive a Satisfactory rating in the future, he had to have a thorough knowledge of all branch procedures, be able to perform all branch procedures and train staff in them, take control of all branch operations, and monitor staff to make certain that all procedures were carried out in a timely manner.
Unfortunately, during the time since that rating, Mr. Lambert has not improved as much as had been hoped. He has been unable to meet these criteria. Examples of his weak performance during this period include:
1. Not knowing the status of the bar-coding or weeding projects at the branch, and not examining the books to be weeded before they were sent in for discard;
2. Not performing computer procedures to link paperback books and magazines;
*329 3. Loaning money to a patron from the branch fine money; and
4. Not keeping the branch up-to-date in entering patron registrations into the computer.
During the past month he has:
1. Incorrectly denied a patron a library card due to the delinquency of an individual living at the same address;
2. Continued to block access to the branch’s PG-OCIRC terminal by working the shipment in the staff lounge after being directed to work it on a specified table in the main library reading room; and
3. Spent time away from the branch without submitting a request for leave and still not submitting a leave slip after being directed to do so.
It is regretful that Mr. Lambert has been unable to meet the requirements of a Librarian I; however, due to the circumstances, he is once again being given an Unsatisfactory rating in Performance.
Rule XII, Section 1.6 of the Personnel Rules for Jefferson Parish provides in part:
Any employee who has been rated Unsatisfactory shall be re-rated not sooner than two (2) months nor later than six (6) months after the effective date of the Unsatisfactory rating. If the re-rating is Unsatisfactory, it shall be the duty of the Appointing Authority to reassign, demote, or dismiss the unsatisfactory employee.
The appointing authority chose to terminate Lambert effective May 2, 1990.
At the hearing before the Board the assistant parish attorney did not put on evidence to establish the basis for Lambert’s receiving the first unsatisfactory rating of October 16, 1989. The assistant parish attorney only entered the October 16, 1989 evaluation into evidence without having any testimony. When Lambert’s counsel sought to question Lambert regarding the allegations in the October 16, 1989 rating the assistant parish attorney objected. He stated he was only introducing the first unsatisfactory evaluation for the limited purpose of establishing there was a first unsatisfactory evaluation which had not been appealed. As noted previously Rule XII, Section 1.6 of the Personnel Rules for Jefferson Parish bars an appeal of a service rating “until and unless.[it] result[s] in some form of appealable disciplinary action.”
The Hearing Examiner noted he was only interested in the specific instances relied on in the second unsatisfactory rating. Accordingly, Lambert’s counsel did not pursue any further questioning of the alleged allegations in the first unsatisfactory evaluation. At no point in the record did Lambert’s counsel stipulate to the accuracy of the allegations contained in the evaluation of October 16, 1989. There is no evidence in the record validating the accuracy of the October 16, 1989 evaluation.
In Bonner v. Dept. of Parks & Recreation, 524 So.2d 255, 257 (La.App. 5th Cir. 1988) we explained the proper standard of review:
The appropriate standard of appellate review of actions of a civil service board is to determine whether the conclusion reached was arbitrary or capricious. Newman v. Department of Fire, 425 So.2d 753 (La.1983). Disciplinary action against a civil service employee will be deemed arbitrary and capricious unless there is a real and substantial relationship between the improper conduct and the efficient operation of the public service, and the appointing authority must demonstrate by a preponderance of the evidence that the conduct did in fact impair the efficiency and orderly operation of the public service.
On appellate review, the findings of fact of a civil service board are entitled to the same weight as the findings of fact made by a trial court and are not to be overturned in the absence of manifest error. City of Kenner v. Wool, 433 So.2d 785 (La.App. 5 Cir.1983). [emphasis added].
There is no evidence in the record showing the allegations in the first unsatisfactory rating, even if they had been proven or admitted, impaired the efficiency of *330 the service. Accordingly, there is no legal cause demonstrated with regard to the October rating. Bonner, supra. Additionally, the rating itself is therefore “invalid for lack of legal cause.” Hamlett v. Division of Mental Health, Etc., 325 So.2d 696, 700 (La.App. 1st Cir.1976).
Moreover, the Personnel Board erred when it evidently considered the invalid October 16,1989 rating to justify dismissal. With regard to the second unsatisfactory rating the Board considered “the instances of the fine box money and the 20 to 30 minutes absence without leave” as insufficient legal cause for termination but opined that “when all of the appointing authorities [sic] complaints are considered in a larger context, the appellant’s job performance did not improve.” [emphasis added]. It was error for the Board to rely on all of the complaints.
Since the first unsatisfactory rating of October 16, 1989 is invalid for lack of legal cause then Rule XII, Section 1.6 of the Personnel Rules for Jefferson Parish making it mandatory the appointing authority “reassign, demote, or dismiss the unsatisfactory employee” after two unsatisfactory ratings is inapplicable.
However, appellee argues in brief that Lambert’s violations of the following rules support the Board’s conclusion he should be terminated:
1. Taking money from the library fine box;
2. Being absent without leave for approximately 20-30 minutes.
We note at the outset that Lambert testified without contradiction he was a Master’s level librarian with 20 years experience. He was Director of the St. James Parish Library system from 1980 to 1988. He began working in Jefferson Parish as the Harahan Branch Manager, a Librarian I position, on April 25, 1988. After his first six months of employment he was given a satisfactory rating by Troxclair.
Lambert admitted the above two allegations which occurred during the second rating period of April 16,1990. Lambert testified he informed “the people on duty” he was called to render assistance to a friend. He left during his lunch period but was 20 minutes late in returning. He stated he borrowed $1.00 from the library fine box to give to a needy patron. He also testified without contradiction that he returned the $1.00 he borrowed. The testimony at trial revealed there was no record kept of the amount of money collected in fines. He explained he generally gave this patron money from his own funds but on this occasion he borrowed it from the fine box in an attempt to determine which of the employees under his supervision was trying to “undercut” his authority by reporting his actions to headquarters.
Although Ann B. Fensin, one of Lambert’s supervisors, testified she did not recall Lambert telling her he returned the money she also stated the conversation regarding the loaning of money to a patron was between “Mrs. Riehburg” and Lambert. Troxclair, another supervisor, stated the loaning of the fine money was against the library policy which “Miss Riehburg” explains in her presentation. Ms. Riehburg did not testify. There is no evidence such a violation of library policy even if proven “impaired] the efficiency and orderly operation of the public service.” Bonner, supra at 257. Furthermore, there was no testimony other than Lambert’s as to how fine money was to be used. While he admitted to making an exception in this case he also stated:
in the library field, the fine money that comes in, it’s at the discretion of the manager to use it to buy lollipops for the kids up to a few dollars. We could buy supplies. We can buy supplies too.
Since Ms. Riehburg did not testify the Board could only speculate as to the parameters given by her in her presentation to Lambert and whether she properly instructed him on the policy regarding the exceptions to the use of the fines.
The appellee also relies on our case of Appointing Authority Chief of Police for the City of Kenner v. Trippi, 499 So.2d 1177 (La.App. 5th Cir.1986) for the proposition that a five-minute absence from work without leave justifies dismissal. The *331 Trippi case is inapposite. In Trippi we noted Chief Lentini’s testimony at 1181:
Chief Lentini forcefully testified about how important it is for him (and other superior officers) to know that if officers are assigned to a particular shift of duty, they could be called upon at any time during that shift. Their superiors and colleagues had a right to be able to count on this additional personnel being available in the event of an emergency, [emphasis in original].
Therefore, there was testimony in Trippi to establish “a real and substantial relationship between the improper conduct and the efficient operation of the public service [which] impair[ed] the efficiency and orderly operation of the public service.” Bonner, supra at 257. The record in the instant case is devoid of any evidence establishing Lambert’s absence of 20 to 30 minutes “impair[ed] the efficiency and orderly operation of the public service.” Id. Furthermore, there is evidence there was a library employee at the library during Lambert’s absence.
Troxclair testified she told Lambert he needed to request leave but that he did not do so. Lambert explained his failure to turn in a leave slip as follows:
I had accrued unofficial overtime with the Parish; and it wasn’t in writing, but I had spent evenings past 8:00 which covered this amount of time.
He said he was still waiting for an answer as to whether he had to fill out a leave slip for that period. His testimony he worked overtime on occasion was not contradicted.
Lambert also stated he asked Troxclair what he should do as far as requesting leave and Troxclair told him she would speak to Ms. Richburg. Troxclair denied telling Lambert she had to check with Miss Fensin; however, she was not asked, nor did she testify to this question in relation to Ms. Richburg instead of Miss Fensin. We previously noted Ms. Richburg did not testify.
The remaining allegations contained in the second unsatisfactory evaluation of April, 1990 concern the following issues: bar coding, patron registration, and patron delinquency.
The Board evidently concluded the appointing authority had not met its burden of proving Lambert was unfamiliar with the status of the bar coding of books when it noted:
As to the charges that the appellant was not aware of special branch as in the case of bar coding of paperbacks, there seemed to be some confusion between exactly which paperbacks needed to be bar coded and the progress being made by the branch in accomplishing this assigned task and whether or not the appellant knew exactly which books his supervisor was concerned about.
We agree. Our review of the record reveals Troxclair testified she was informed by a staff member at Lambert’s branch “that they had finished bar coding all of the paperbacks.” Her actual complaint was that Lambert did not respond to her question of the progress of bar coding. Lambert testified she caught him off guard with the question since the bar coding of certain projects had been completed a long time previously. The Board apparently gave greater weight to his testimony in that regard.
Troxclair also testified Lambert did not keep the branch up-to-date and did not perform computer procedures. She stated she visited the library on one occasion to find Lambert copying items which were on the computer screen instead of pressing a button to get a printout. She felt he should have known how to use the computer more efficiently.
She stated Lambert would go for days without entering patron registrations into the computer. These were supposed to be done daily. Lambert explained a shortage of manpower was the reason for the delay. There is no testimony contradicting Lambert’s testimony that he was understaffed at times.
Troxclair testified that Lambert further violated library policy by refusing to give a library card to a child because the child resided at an address of an individual with a delinquency. Miss Fensin stated it was *332 library policy that individuals and not addresses be held accountable. She thought branch managers would be aware of that policy and that it was contained in the manual held at each branch. The written policy on a delinquent patron was introduced into evidence. That policy does not address the situation where a delinquent patron’s child or guardian is requesting the card. Lambert admitted denying the card to the “juvenile” since the guardian or parent was on the delinquent list. He stated the delinquent patron refused to pay for a book valued at $25.00. He was trying to get the patron to return the book.
With regard to the allegations concerning bar coding, patron registration and patron delinquency, we are compelled to conclude that even if proven to be violations of policy no evidence of impairment of the service was shown. There is no evidence to establish “a real and substantial relationship between the improper conduct and the efficient operation of the public service [which] impaired] the efficiency and orderly operation of the public service.” Bonner, supra at 257.
DECREE
Accordingly, for the reasons stated, IT IS ORDERED that the unsatisfactory ratings of October 16, 1989 and April 26, 1990 be removed and deleted from Lambert's record, and that a satisfactory rating be granted Lambert as of October 16, 1989, and appropriately entered in Lambert’s record.
IT IS FURTHER ORDERED that Lambert be reinstated to the position of Librarian I at the Harahan Branch Library with all the rights, benefits, privileges and emoluments thereto, including promotions, salary increases or other benefits of any nature whatsoever to which he was legally entitled to as an employee in good standing from October 16, 1989 to date of reinstatement. This matter is remanded to the Personnel Board for further proceedings pursuant to Rule II, Section 4.9 of the Jefferson Parish Personnel Rules for a determination of the award. That section provides:
In its decisions resulting from appeals hearings taken under this section, the Board may affirm, amend, or overturn the action from which appellant appealed; including an award of back pay and other emoluments. However, in cases in which back pay is awarded, the appellant shall be required to file with the Finance Director a notarized statement of all monies earned by appellant during the period of absence from the Parish payroll, and such earnings shall be deducted in computing the amount of the back-pay award.
REVERSED AND RENDERED; REMANDED.