I íWILLIAMS, Judge.
The plaintiff, Karl Deal, appeals a judgment affirming the decision of the Monroe Municipal Fire and Police Civil Service Board, which found that the City of Monroe acted in good faith and for cause in terminating Deal’s employment with the Fire Department. For the following reasons, we affirm.
FACTS
On August 6, 1998, Karl Deal was working as a Captain in the Monroe Fire Department when he was instructed to report to the St. Francis Medical Center in Monroe, Louisiana, for a random drug and alcohol screening test. Hospital personnel collected a urine sample from Deal, who returned to work. The results of Deal’s test were reported as positive for alcohol at a level of .12 grams per deciliter (g/dl). On August 18, 1998, the Fire Department issued written notice to Deal that his employment had been terminated due to a positive test result for alcohol at a level which exceeded the allowed limit of .01 grams of alcohol per 100 cubic centimeters of blood, as provided in the “Policy and Procedure Relative to Drugs and Alcohol” enacted by the City of Monroe (“City”).
Deal filed an appeal of his termination with the Monroe Municipal Fire and Police Civil Service Board (the “Board”). Following a hearing, the Board issued a written finding of fact concluding that the evidence sufficiently established that Deal had violated the City’s policy related to alcohol. The Board also found that the City, as appointing authority, had acted in good faith and for cause in terminating Deal’s employment.
The plaintiff, Karl Deal, sought review of the Board’s decision in the district court. After hearing argument by the parties, the district court determined that the Board’s decision was supported by the evidence presented and that the Board had acted in good faith and for cause. The district court rendered judgment affirming the decision of the Board to uphold the City’s termination of plaintiffs | {.employment. The plaintiff appeals the judgment.
DISCUSSION
The plaintiff contends the district court erred in affirming the Board’s decision, which upheld the City’s termination of his employment. Plaintiff first argues that the Board failed to follow the proper evi-dentiary rules in admitting the urine test results into evidence without a sufficient factual foundation.
Any regular employee in the classified service who feels that he has been discharged without just cause may demand a hearing by the board to determine the reasonableness of the action. LSA-R.S. 33:2501(A). Both the employee and the appointing authority shall be afforded an opportunity to appear before the Board and present evidence. The Board shall have complete control over any such hearing and may conduct it in any manner deemed advisable without prejudice to any party. The procedure followed shall be informal and not necessarily bound by the “legalistic rules” of evidence. LSA-R.S. 33:2501(B)(3).
In the present casé, the testimony presented during the plaintiffs hearing, *259 which was held at the Board’s August 31, 1998 meeting, was not transcribed. However, the oral testimony is summarized in the minutes of the meeting and the Board’s written finding of fact. Plaintiff argues that his test results should not have been admitted into evidence because the meeting minutes fail to establish that the specimen was properly taken, labeled, preserved and transported for analysis.
Although the Board'did not follow the formal rules of evidence, the meeting minutes include information about the testing process. The St. Francis Medical Center (“St.Francis”) laboratory conducted the drug and alcohol screens for the City and Doyle Wilson, a lab staff member, explained the testing procedure to the Board members. The test results were interpreted by Dr. Richard Blanchard of Pathology Associates. Dr. Blanchard stated that while blood tests are slightly more accurate for detecting alcohol, urine sampling is also reliable. In addition, lathe record contains laboratory documents showing that a specimen was obtained from the plaintiff by a collector, who transferred it to a freezer for testing. A technologist then retrieved the specimen for lab analysis.
Pursuant to LSA-R.S. 33:2501(B)(3), the Board was not required to apply the Code of Evidence rules in conducting the hearing. Based upon this record, the Board could reasonably have concluded that the test results were reliable and admissible as evidence at the hearing. The plaintiffs argument lacks merit.
The plaintiff next contends the district court erred in finding that the Board was not arbitrary in allowing the City to circumvent its procedures in conducting alcohol tests of employees. Plaintiff argues that the use of the urine test did not comply with the City’s testing procedure, that the St. Francis laboratory was not authorized to conduct tests under the policy and that Dr. Blanchard was not properly selected as the medical review officer.
Pursuant to LSA-R.S. 33:2501(E)(3), the role of a reviewing court in civil service appeals is confined to a determination of whether the Board’s decision was made in good faith for statutory cause. Shields v. City of Shreveport, 579 So.2d 961 (La.1991). Courts look only to the evidence presented before the Board and review this evidence in light of the presumption that the Board found sufficient facts to afford a legal basis for its decision. Shields, supra; McIntosh v. Monroe Mun. Fire & Police Civil Service Bd., 389 So.2d 410 (La.App. 2d Cir.1980), writ denied, 395 So.2d 1363 (La.1981). The civil service board’s factual conclusions should be given deference and will not be overturned if there is any evidence to support them and they are not manifestly erroneous or arbitrary. McDonald v. City of Shreveport, 26,877 (La.App.2d Cir.5/10/95), 655 So.2d 588.

Validity of Testing Method

In the present case, the plaintiff criticizes the City’s use of a urine test tó screen employees, arguing that such tests are not used in State Police investigation | ¿of driving while intoxicated (DWI) cases, and that the results are not measured in grams of alcohol per 100 cubic centimeters of blood as required by Section 3.1 of the City’s testing policy.
Section 3.1.A of the City’s policy relative to drugs and alcohol provides that testing for alcohol “shall be by those methods and recognized by the State of Louisiana” for DWI cases and that the maximum limit for alcohol “shall be .01% or more by weight based on grams of alcohol per 100 cubic centimeters of blood.” Although the use of the phrase “those methods and recognized by the State” in the ordinance is somewhat unclear, a reasonable interpretation does not support the plaintiffs position that the City, is limited to a test which is actually used by state personnel in the prosecution of DWI cases. In LSA-R.S. 32:661, a urine test is listed as a possible means which the state may use to deter *260 mine the alcohol content of a drivers blood. Thus, the record provides a reasonable basis for finding that urinalysis is a testing method “recognized” by the state.
In addition, the minutes of the Board’s meeting indicate that Dr. Blanchard stated that test results expressed in terms of grams of alcohol per deciliter is equivalent to a result expressed as grams of alcohol per 100 cubic centimeters. Consequently, the Board was not arbitrary in considering the test results as evidence that plaintiffs alcohol level exceeded the allowable limit of .01% of grams per 100 cubic centimeters stated in the City’s policy.
The plaintiff also asserts that LSA-R.S. 49:1001 et seq. prohibits the City’s use of urine testing if such a test is used to terminate a worker’s employment. However, LSA-R.S. 49:1002 expressly provides that the statute does not preclude or regulate testing for alcohol. In light of the evidence presented at the hearing, we cannot say the Board was manifestly erroneous in finding that the use of urine tests to screen employees is consistent with the City’s policy related to drugs and alcohol. The plaintiffs argument lacks merit.

IsLaboratory

Citing Section 3.1 of the City’s employee handbook, the plaintiff contends the Pathology Associates laboratory at St. Francis Medical Center was not authorized to conduct tests for alcohol under the City’s screening policy, and therefore his test results should not have been considered as evidence. However, the record indicates that the handbook did not accurately reproduce the City’s ordinance, which provides that testing for alcohol may be conducted by a laboratory selected under Section 3.2 of the City’s drug and alcohol policy. Section 3.2 authorizes the mayor to select the laboratory which will perform the substance abuse screening for the City, subject to certain criteria.
The plaintiff complains that the evidence does not reflect that the City’s mayor designated St. Francis as the appropriate laboratory. However, during the hearing before the Board, plaintiff did not object to the authority of the St. Francis laboratory to conduct the substance abuse tests. Without evidence to the contrary, we will defer to the Board’s implicit finding that the St. Francis laboratory was authorized to perform the screening tests for the City.

Medical Review Officer

The plaintiff argues that Dr. Blanchard could not act as the medical review officer under Section 3.1 of the drug and alcohol policy, because the applicable Section 3.6 did not appear in the ordinance. However, Section 3.1 of the policy addresses who may conduct the test for alcohol, and the evidence shows that Dr. Blanchard did not conduct the testing, but reviewed the results. Section 4.1 of the City’s policy concerns the selection of a medical review officer, who is a licensed physician responsible for receiving laboratory results generated by the drug testing procedure.
In his brief to this court, plaintiff argues that Dr. Blanchard does not satisfy the Section 4.1 criteria because the record lacks evidence to show that he has | ^sufficient knowledge of substance abuse disorders and the medical training to interpret an individual’s positive test result. We note that Dr. Blanchard testified at the hearing before the Board and was available for cross-examination regarding his medical opinions and training. However, the record does not show that plaintiff objected to Dr. Blanchard’s qualifications at the time.
The minutes of the Board’s meeting indicate that Dr. Blanchard discussed the relative accuracy of the blood and urine testing and the fact that generally there is a difference of only .02 grams between the results of the two testing methods. Dr. Blanchard also questioned plaintiffs explanation that his consumption of an over-the-counter decongestant was responsible for the positive test result.
*261 Based upon this record, we cannot say the Board was manifestly erroneous in finding that Dr. Blanchard satisfied the Section 4.1 criteria and was authorized to act as the medical review officer. Thus, the Board was not arbitrary in considering Dr. Blanchard’s testimony. The plaintiff’s argument lacks merit.
After reviewing the evidence presented at the civil service appeal hearing in light of the presumption that the Board found sufficient facts to establish a legal basis for its decision, we must conclude that the Board was not arbitrary or capricious in reaching its decision that the City’s termination of the plaintiffs employment was made in good faith and for statutory cause. Therefore, we will not disturb the result. The assignment of error lacks merit.
CONCLUSION
For the foregoing reasons, the district court’s judgment upholding the decision of the Board is affirmed. Costs of this appeal are assessed to the appellant, Karl Deal.
AFFIRMED.