ROLAND L. BELSOME, Judge.
 

 11 Defendant-Appellant, Cory McKain, appeals the judgment of the Civil Service Commission denying the appeal of his termination by the Appointing Authority for filing a false public record. For the reasons that follow, we affirm.
 

 FACTS AND PROCEDURAL HISTORY
 

 Defendant-Appellant Cory McKain worked as an officer in the Special Operations Division, Tactical Unit, and had permanent status. On June 11, 2009, Investigators Michael Jurina and Gregory DeGruy of the Orleans Parish District Attorney’s office were assigned the extradition of Lee Osborn, a convicted felon from St. Louis, Missouri, who failed to register as a sexual offender. Officer McKain and his partner, Officer Charles Stamps, were assigned to assist in this extradition the following day. The officers’ assignment involved taking custody of Osborn at 715 South Broad Street, New Orleans, Louisiana (“Central Lockup”), and processing the necessary paperwork to have Osborn booked.
 

 On June 12, 2009, Officer Stamps met the investigators from the District Attorney’s office in Central Lockup and took custody of Osborn while Appellant remained in the patrol car and filled out the New Orleans Police Department (“NOPD”) Incident Report. When filling out the report, Appellant omitted the ^critical fact that the District Attorney’s office had previously extradited and taken custody of Osborn, transported and released him to the NOPD. Instead, Appellant falsely reported that he and Officer Stamps, while on patrol, witnessed a suspicious person, ran a warrant check, and arrested Osborn at 1900 Tulane Avenue. Thus, the report erroneously credited Appellant and Officer Stamps for an arrest conducted in the field, rather than assisting the District Attorney’s office with the extradition of a convicted felon who was already in custody.
 
 [1]
 

 On July 20, 2009, the District Attorney’s Chief Investigator, Howard Robertson, made a formal complaint to the Public Integrity Bureau (“PIB”), asserting that an NOPD officer had possibly inaccurately documented a report with regard to an extradition made by members of his unit.
 
 [2]
 
 The PIB commenced an investigation and subsequently issued a report with disciplinary recommendations on September 21, 2009. After a Disciplinary Hearing on March 31, 2010, Appellant was terminated by Deputy Superintendent Kirk M. Bouye-las, the Appointing Authority, for filing a false police report. Appellant was also disciplined for violations of professional conduct and performance of duty, and charged with a sustained violation of Rule IX of the Rules of the Civil Service Commission, relative to Maintaining Standards of Service.
 

 A Letter of Reprimand from Warren J. Riley, Superintendent of Police, was issued to Appellant on April 1, 2010, notifying him of his dismissal from the NOPD for violating Rule 2: Moral Conduct, paragraph 1, Adherence to Law, to wit: Louisiana Re
 
 *360
 
 vised Statute 14 Article 133 — Filing or maintaining false public records.
 

 | oAfter hearings on June 3, 2010 and July 22, 2010, the Civil Service Commission sustained the Appointing Authority’s discipline and denied Appellant’s appeal of his termination on September 22, 2010.
 

 STANDARD OF REVIEW
 

 An appellate court is presented with a multifaceted review function with regard to Civil Service disciplinary cases.
 
 Bannister v. Dep’t of Streets,
 
 95-0404, p. 8 (La.1/16/96), 666 So.2d 641, 647 (citing
 
 Walters v. Department of Police of the City of New Orleans,
 
 454 So.2d 106 (La.1984)). When reviewing the Commission’s factual findings, an appellate court should apply the clearly wrong or manifestly erroneous standard of review.
 
 Id.
 
 Additionally, when “evaluating the Commission’s determination as to whether the disciplinary action is both based on legal cause and commensurate with the infraction, the court should not modify the Commission’s order unless it is arbitrary, capricious, or characterized by abuse of discretion.”
 
 Id.
 
 The Commission’s order is considered arbitrary or capricious if there is an absence of a rational basis for the action taken.
 
 Bannister,
 
 95-0404, p. 8, 666 So.2d at 647 (citing
 
 Shields v. City of Shreveport,
 
 579 So.2d 961 (La.1991);
 
 Bicknell v. United States,
 
 422 F.2d 1055 (5th Cir.1970)).
 

 DISCUSSION
 

 Appellant first argues
 
 [3]
 
 that the Civil Service Commission erred in finding that he violated La. R.S. 14:133 relative to preparing a false public record.
 
 [4]
 
 ^Alternatively, Appellant urges that if this Court finds that he did file a false public record, this Court should conclude that any false statement contained in the police report was not a material fact for purposes of La. R.S. 14:133.
 

 In support of this argument, Appellant references the recommendations made by Sergeant Omar M. Diaz of the PIB in the September 21, 2009 Formal Disciplinary Investigation report. In the report, Sgt. Diaz recommended that the Rule 2 violation with regard to La. R.S. 14:133 and filing or maintaining a false public record not be sustained against Appellant because the District Attorney’s office declined to pursue a criminal investigation.
 
 [5]
 
 Appellant also relies upon Sgt. Diaz’s testimony from the June 3, 2010 hearing, at which time Sgt. Diaz
 
 [6]
 
 confirmed that in the Sep
 
 *361
 
 tember 21, 2009 report, he did not recommend sustaining the violation of La. R.S. 14:133 because the District Attorney’s office declined to prosecute the matter. Additionally, Appellant references Sgt. Diaz’s recommendation in the September 21, 2009 report that Rule 4, an administrative violation, applied, as opposed to Rule 2, a criminal violation, because the officers failed to document the agency that extradited Osborn and the officers of that agency that released custody of Osborn to them:
 
 [7]
 

 |sThe PIB administration meticulously reviewed whether the named employees should be administratively held liable for violating Rule 2: Moral Conduct; Paragraph 1; Adherence to law, to wit: Louisiana Revised Statute 14 Article 133, Relative to Filing or maintaining false public records or Rule 4: Performance of Duty; Paragraph 4; Neglect of Duty, to wit: New Orleans Police Department Operations Manual Chapter 71.1, Prisoner Transportation. After deliberating, the PIB administration determined Rule 4: Performance of Duty; Paragraph 4; Neglect of Duty to wit: New Orleans Police Department Operations Manual Chapter 71.1, Prisoner Transportation was more specific in an administrative capacity than Rule 2: Moral Conduct; Paragraph 1; Adherence to law, to wit: Louisiana Revised Statute 14 Article 133, Relative to Filing or maintaining false public records.
 

 In reviewing Appellant’s appeal of his termination, the Civil Service Commission acknowledged the Appointing Authority’s discipline of an eight-day suspension and termination for Appellant’s violation of internal rules regarding Adherence to Law “to wit: La. R.S. 14:133 relative to preparing a false public record (Police Report), and violating internal rules regarding Professionalism, and Neglect of Duty.” We do not find that the Commission erred in finding that Appellant violated La. R.S. 14:133 relative to filing a false public record, as a police report regarding the arrest of a person is a public record, and Appellant does not dispute that he intentionally falsified the police report. Title 44, which encompasses public records, contains a provision with respect to “records of prosecutive, investigative, and law enforcement agencies.” La. R.S. 44:3. Specifically, La. R.S. 44:3(A)(4)(a) provides, in pertinent part:
 

 (4)(a) The records of the arrest of a person, other than the report of the officer or officers investigating a complaint, until a final judgment of conviction or the acceptance of a plea of guilty by a court of competent jurisdiction. However, the initial report of the officer or officers investigating a complaint, but not to apply to any followup or subsequent report or investigation, records of the booking of a person as provided in Louisiana Code of Criminal Procedure Article 228, | (¡records of the issuance of a summons or citation, and records of the filing of a bill of information shall be a public record.
 

 (b) The initial report shall set forth:
 

 (i) A narrative description of the alleged offense, including appropriate details thereof as determined by the law enforcement agency.
 

 
 *362
 
 (ii) The name and identification of each person charged with or arrested for the alleged offense.
 

 (iii) The time and date of the alleged offense.
 

 (iv) The location of the alleged offense.
 

 (v) The property involved.
 

 (vi) The vehicles involved.
 

 (vii) The names of investigating officers.
 

 La. R.S. 44:3(A)(4)(a) (emphasis added).
 

 Additionally, in the April 1, 2010 Letter of Reprimand issued to Appellant, Supt. Riley stated that he reviewed the entire administrative investigative report authored by Sgt. Diaz, as well as the recommendations made by Deputy Supt. Bouye-las during the March 31, 2010 Disciplinary Hearing. Supt. Riley acknowledged Deputy Supt. Bouyelas’ recommendation that the penalty of dismissal be imposed for the additional sustained violation of Rule 2, Moral Conduct violation, “to wit: Louisiana Revised Statute 14 Article 133 — Filing or maintaining false public records (Police Report).” Supt. Riley concluded as follows:
 

 After a thorough and complete review of the entire investigative report, I find that your conduct ... constitutes a violation of Rule 2: Moral Conduct, paragraph 1, Adherence to Law to wit: Louisiana Revised Statute 14 Article 133 — Filing or maintaining false public records (Police Report), Rule 3: Professional Conduct, paragraph 1; Professionalism and Rule 4: Performance of Duty, paragraph 4; Neglect of Duty, to wit; Chapter 71.1 — Prisoner Transportation, paragraph 1, subparagraph b. [Emphasis added.]
 

 Considering the foregoing, we do not find that the Commission erred in finding that Appellant violated La. R.S. 14:133. Furthermore, we disagree with 17AppeIlant’s argument that any misrepresentations in the police report were immaterial, as a false statement in a public record made with knowledge of its falsity constitutes a violation of La. R.S. 14:133.
 
 See
 
 La. R.S. 14:133(A)(3).
 

 Next, Appellant argues that the Commission erred in finding that cause existed to support termination in this case, because the Appointing Authority did not prove by a preponderance of the evidence that he violated La. R.S. 14:133. Therefore, Appellant submits, even if this Court finds that Appellant filed a false police report, the false statements in the report were not prejudicial to the public service or detrimental to the efficient operation of public service, and cause for his termination did not exist. Additionally, Appellant notes that the false statements on the police report ultimately had no bearing on Lee Osborn’s arrest.
 

 With regard to a finding of cause by the Appointing Authority and the Civil Service Commission, this Court has recognized that legal cause exists when an employee’s conduct impairs the efficient operation of public service.
 
 Whitaker v. New Orleans Police Dept.,
 
 2003-0512, p. 4 (La.App. 4 Cir. 9/17/03), 863 So.2d 572, 575 (citing
 
 Cittadino v. Department of Police, 558
 
 So.2d 1311 (La.App. 4th Cir.1990)). “A reviewing court should affirm the Civil Service Commission’s conclusion as to existence or cause for dismissal of a permanent status public employee when the decision is not arbitrary, capricious, or an abuse of the Commission’s discretion.”
 
 Whitaker,
 
 2003-0512, p. 4, 863 So.2d at 575.
 

 A review of the record evidences that Appellant’s false statements were found to be prejudicial and detrimental to the efficient operation of public service. Deputy
 
 *363
 
 Supt. Bouyelas rejected Sgt. Diaz’s recommendation that the Rule 2 Adherence to Law violation not be sustained, stating at the July 22, 2010 hearing that “[e]ven though the district attorney’s office- determined not to prosecute him, 18it’s still a violation of the law” because “[h]e falsified [the] police report.” The Commission subsequently affirmed the Appointing Authority’s rejection of the recommendation not to sustain the Rule 2 violation against Appellant. In its written reasons, the Commission quoted Superintendent Bouyelas’ testimony at the July 22, 2010 hearing, wherein he stated:
 

 Police officers by the nature of the work have to provide truthful and accurate information in everything we do. If an officer is found to be not credible or untruthful, it will affect everything that we do as far as testimony in court, as far as judges considering arrest warrants or search warrants, knowing that the officer has been found to be untruthful as far as information that’s garnered and given to other police officers and investigators to further investigations.
 

 We find that Superintendent Bouyelas’ testimony,
 
 [8]
 
 together with the evidence contained in the record, supports the determination by the Appointing Authority and the Commission that Appellant’s false statements were in fact prejudicial to the public service and detrimental to the efficient operation of public service.
 
 [9]
 
 Accordingly, we cannot say that the finding of cause was arbitrary, capricious, or an abuse of the Commission’s discretion in this case.
 

 Additionally, for the reasons discussed previously herein, we further conclude that the Appointing Authority proved by a preponderance of the evidence that Appellant violated La. R.S. 14:133 and thus sufficiently established cause for the disciplinary action. Appellant testified on June 3, 2010 that the police report he authored contained false statements:
 

 Q. So this is not a truthful report, correct?
 

 A. Correct.
 

 IflAppellant also confirmed that he intentionally falsified the police report, a public record, to receive credit for the arrest. With regard to the administrative statement that he provided to Sgt. Diaz in connection with the PIB investigation, Appellant testified:
 

 Q. And in response to that very first questions [sic] where it says “Question: Did you lie on this report?” And what is your answer there, sir?
 

 A. Yes, sir, I did.
 

 Q. And then the next question is: “Okay. Why? Why did you lie on that report?”
 

 A. I wanted to make sure that myself and my partner were credited with making the arrest on Mr. Osborn.
 

 [[Image here]]
 

 Q. So you were getting a benefit by misstating your position of where you found this individual?
 

 A. Not a benefit, sir. I’m trying to make it seem like we were actually out on the street working.
 

 Q. So you were mischaracterizing what you were really doing?
 

 
 *364
 
 A. Yes, I stated that.
 

 Lastly, Appellant argues that the discipline in this case was not commensurate with the dereliction, that the discipline imposed had no rational basis, and that the discipline was therefore arbitrary and capricious. Appellant asserts that suspension, rather than termination, was the appropriate discipline for the violations.
 

 The Civil Service Commission is vested with the authority to hear and decide disciplinary cases and to modify, reverse, or affirm a penalty. La. Const, art. X, § 12;
 
 Bovia v. Dept. of Police,
 
 2008-0710, p. 2 (La.App. 4 Cir. 1/7/09), 2 So.3d 1159, 1161. The Commission has a duty to make an independent determination as to whether the Appointing Authority had cause for taking | ^disciplinary action and, if so, whether the discipline imposed is commensurate with the dereliction.
 
 Walters,
 
 454 So.2d at 113.
 

 In reviewing the appeal, the Commission recognized Appellant’s “outstanding record with the SWAT team” and the fact that Appellant had not previously been disciplined for untruthfulness. The Commission concluded, however, that Appellant’s “poor judgment” was. a serious matter. In affirming the discipline imposed by the Appointing Authority, the Commission determined that it was not the Commission’s role “to question the policy of the Police Department of requiring the highest level of honesty and integrity of police officers in completing public records such as police reports.”
 

 The Commission also referenced the testimony of Deputy Supt. Bouyelas, who stated that Appellant’s ability to continue his duty as a police officer was “severely jeopardized, if not [in] fact, fully compromised” by his violations and false statements on the police report. Upon a review of the record in its entirety, we do not find that the discipline in this case lacked a rational basis, nor do we find that the discipline imposed was arbitrary or capricious. Therefore, the Commission did not err in determining that the disciplinary action was commensurate with the offense under these particular facts and circumstances.
 

 CONCLUSION
 

 For the foregoing reasons, the judgment of the Civil Service Commission is affirmed.
 

 AFFIRMED
 

 [1]
 

 . Officer Stamps was unaware of the misstatements and did not participate in writing or reviewing the report.
 

 [2]
 

 . The District Attorney’s office declined to initiate a criminal investigation or prosecution in the matter.
 

 [3]
 

 . Appellant submits issues for review in his appellate brief; assignments of error are not specified.
 

 [4]
 

 . La. R.S. 14:133 provides, in pertinent part:
 

 A. Filing false public records is the filing or depositing for record in any public office or with any public official, or the maintaining as required by law, regulation, or rule, with knowledge of its falsity, of any of the following:
 

 (1) Any forged document.
 

 (2) Any wrongfully altered document.
 

 (3) Any document containing a false statement or false representation of a material fact.
 

 B. The good faith inclusion of any item of cost on a Medical Assistance Program cost report which is later determined by audit to be non-reimbursable under state and federal regulations shall be an affirmative defense to a violation of this Section.
 

 C.Whoever commits the crime of filing false public records shall be imprisoned for not more than five years with or without hard labor or shall be fined not more than five thousand dollars, or both.
 

 La.Rev.Stat. Ann. § 14:133 (emphasis added).
 

 [5]
 

 . Sgt. Diaz also recommended that the violations of Professional Conduct, Neglect of Duty, New Orleans Police Department Operations Manual, Chapter 71.1, Prisoner Transportation, and Rule IX of the Civil Service Rules for the City of New Orleans all be sustained against Appellant.
 

 [6]
 

 . Sergeant Lajone Roberts, Sergeant Hans Ganthier, and Sergeant Sherman Joseph testified on Appellant's behalf at the June 3, 2010 proceedings.
 

 [7]
 

 . Specifically, Sgt. Diaz concluded:
 

 What the officers failed to do was document the agency that extradited the prisoner and the officers of that agency that released custody of'the prisoner to the named employees. Therefore, Rule 4: Performance of Duty: Paragraph 4; Neglect of Duty, to wit: New Orleans Police Department Operations Manual Chapter: 71.1, Prisoner Transportation applied as oppose[d] to Rule 2: Moral Conduct; Paragraph 1; Adherence to law, to wit: Louisiana Revised Statute 14 Article 133, Relative to Filing or maintaining false public records.
 

 [8]
 

 . Additionally, the "Comments” section of Appellant's Disciplinary Hearing Disposition provides that Appellant "falsified a police report” and "admitted to that fact”; such a violation is "viewed as a Cat 3 offense whereby the [police officer] has affected his ability to perform the duties of a police officer.”
 

 [9]
 

 . The NOPD submits that cause and penalties related to the violations of professional conduct and performance of duty were stipulated to by Appellant’s counsel at the July 22, 2010 hearing.